UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In Re:<br><br>TRIKEENAN TILEWORKS INC.,<br><br>Debtor. | Chapter 11<br>Case No. 10-13725-JMD |
| In Re:<br><br>TRIKEENAN HOLDINGS INC. | Chapter 11<br>Case No. 10-13726-JMD |
| In Re:<br><br>TRIKEENAN TILEWORKS INC.<br>OF NEWYORK<br><br>Debtor. | Chapter 11<br>Case No. 10-13727-JMD<br><br>Jointly administered through<br>Case No.: 10-13725-JMD<br><br>**Hearing Date: October 6, 2010**<br>**Hearing Time: 9:00 AM** |

**MOTION FOR AN ORDER AUTHORIZING BUT NOT DIRECTING CERTAIN
PREPETITION PAYMENTS TO CRITICAL VENDORS**

Trikeenan Tileworks, Inc. (the "<u>Debtor</u>"), the debtor and debtor-in-possession in the above-captioned Chapter 11 case, respectfully requests that this Court enter an order pursuant to 11 U.S.C. Sections 105(a) and 363(b) authorizing but not requiring the payment of prepetition claims to certain critical vendors. In support of this motion, the Debtor states as follows:

**<u>JURISDICTION, VENUE, AND STATUTORY BASIS</u>**

1. The Court has jurisdiction to entertain this motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief sought herein are 11 U.S.C. §§ 105(a) and Fed R. Bankr. P. 1015(b).

1

## BACKGROUND

2. On August 30, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"). The Debtor continues to operate its business as debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Debtor's Chapter 11 case, and no official committees have been appointed or designated. On September 3, 2010, this Court entered an order directing the joint administration of the three above-captioned cases.

3. On the Petition Date, Trikeenan NY and Holdings also filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in this Court.

4. The Debtor manufactures specialized, hand-crafted artisan tiles. The Debtor operates a retail store and showroom in Keene, New Hampshire and also markets its tiles to dealers across the country. Trikeenan NY manufactures ordinary and industrial use tiles at a facility in New York. The Debtor manages Trikeenan NY's customer orders and sales in addition to its own customer orders and sales. Because the Debtor's business and Trikeenan's business are interrelated, they have substantial interests in common. Indeed, large capital investments in the New York facility on the eve of an economic downturn created the financial difficulties which necessitated the Chapter 11 filings.

5. The Debtor is incorporated under New Hampshire law. Trikeenan NY is incorporated under New York law. Holdings is the parent company of both Trikeenan NY and the Debtor and is incorporated under New Hampshire law.

## REQUEST FOR RELIEF

6. By this motion, the Debtor requests entry of an order authorizing but not requiring Debtor to pay or honor the prepetition claims of two critical vendors and approving certain procedures related thereto.

7. Debtors have numerous vendors, most of whom can be managed post-petition or if absolutely necessary, replaced with alternative suppliers. Two of the debtors' vendors, however, supply material crucial to the manufacture of Debtors' product and are the only source of the necessary material within the continental United States. The vendors at issue are Clayscapes Pottery Inc. and Ironrock Capital Inc.

8. Clayscapes provides the Debtors with all the clay and glaze material used in both the New York and New Hampshire factories and all the kiln maintenance equipment for the New Hampshire factory. The clay used in debtors' manufacturing operations is uniquely formulated and is not available from any other supplier. Trikeenan NH owes Clayscapes $27,387.84 arising from invoices dated from July 14, 2010 to August 25, 2010.

9. Ironrock Capital supplies brick for Debtors' "boneyard brick" collection. Ironrock is the only source for the particular brick at issue; without it, Debtor would lose the ability to produce an entire product line. Debtor owes Ironrock $6320.27 arising from invoices dated from August 3, 2010 to August 23, 2010.

10. Debtors seek authority to make, in their discretion and based on their business judgment, up to $33,608.11 in critical vendor payments.

11. To determine the identity of critical vendors for purposes of this motion, Debtors' management reviewed the books and records of the Debtors and engaged in detailed discussions and negotiations with representatives of the relevant suppliers, Clayscapes and Ironrock, to determine whether or not and on what terms they would continue to supply materials. Both Clayscapes and Ironrock are small companies which are unwilling or unable to continue to supply to the debtor without receiving payment of prepetition claims, and each supplies a unique product critical to the Debtors' ability to continue normal manufacturing operations.

12. In the ordinary course of business operations, Debtors maintained an "open account" relationship with each of the critical vendors. Each of the above-described suppliers is critical to the continued manufacture of the Debtors' product line, and each is the single source of product. To minimize the disruption of Debtors' operations, preserve value and ensure the continuity of Debtors' product line, Debtor requires an ongoing "open account" relationship with each of these suppliers.

**CONDITIONS**

13. In return for making the critical vendor payments outlined herein, Debtors will require that each vendor agree to continue supplying product on terms acceptable to Debtors in light of the historical business practices between the parties. Debtors propose that each of the critical vendors outlined herein be asked to consent to certain terms, or in the absence of consent be ordered as follows: a) the vendor has reviewed the terms of the Critical Vendor order and will comply with it; b) the vendor will not assert a reclamation claim; c) the vendor will reinstate "net thirty" or similar credit terms consistent with historical business practices between the parties; and d) if the critical vendor later refuses to supply after receiving payment, the payment will be deemed to be on account of any then outstanding post-petition obligation and the vendor shall immediately repay any amount which exceeds the post-petition obligation.

14. The above-described conditions shall be legally binding upon the parties, governing their continued business relationship. Debtors hereby seek the authority but not the direction to make the critical vendor payments as outlined herein.

**BASIS FOR RELIEF**

15. Pursuant to 11 U.S.C. sections 105(a) and 363(b), it is appropriate to authorize the payment of prepetition obligations in appropriate and limited circumstances, when necessary to preserve the going concern value of bankruptcy estate. Indeed, as fiduciaries under Sections 1107 and 1108,

Debtors have an obligation to maximize value, and it is sometimes necessary to pay prepetition claims in order to meet this obligation. See In re Ionosphere Clubs Inc, 98 B.R. 174,175 ( Bankr. S.D. N.Y. 1989); In re CoServ LLC, 273 B.R. 487,497 (Bankr. N.D. Tex. 2002). Courts have often authorized such payments when they serve a valid business purpose. Id. When a vendor is the only source of supply for a material critical to the continued manufacture of Debtors' product when nonpayment would trigger the withholding of supply, it is not only appropriate but critical to authorize the payment of prepetition claims. Ionosphere Clubs, supra.

16. Here, the limited critical vendor payments requested are necessary to preserve the going concern value of the Debtors' enterprise; each of the critical vendors outlined herein supplies a unique material critical to normal manufacturing operations. Debtors have narrowly tailored their request to isolate the truly critical vendors.

17. Each of the critical vendors identified herein have supplied materials to the Debtors within 20 days of the Petition Date, and thus each could assert a reclamation claim under 11 U.S.C. section 503(b)(9) and an administrative claim which would have to be paid at confirmation. As a result, the relief requested herein affects primarily the timing rather than the amount of payment to those vendors.

**NOTICE**

18. Notice of this Motion has been provided to (a) the Office of the United States Trustee, (b) the Debtor's secured lenders or the attorneys for the secured lenders, where appropriate, and (c) the holders of the twenty (20) largest unsecured claims against each of the Debtors a copy of this Motion and a copy of the Notice of Hearing relating to this Motion. In light of the nature of the relief requested herein, the Debtor submits that no other further notice is necessary.

19. No prior motion for the relief requested herein has been made to this or any other Court.

5

WHEREFORE, the Debtor requests:

A. That this Court enter an order authorizing but not requiring the payment of prepetition claims to Clayscapes Inc and Ironrock Capital Inc. on the terms and conditions outlined herein;

B. Such other and further relief as is just.

Respectfully submitted,

TRIKEENAN TILEWORKS, INC.

Dated: September 7, 2010    By: /s/Kristin B. Powers
                                Kristin B. Powers, President

TRIKEENAN TILEWORKS INC
OF NEW YORK

By: /s/Kristin B. Powers
    Kristin B. Powers, President

TRIKEENAN HOLDINGS INC.

By: /s/Kristin B. Powers
    Kristin B. Powers, President

BERNSTEIN SHUR SAWYER & NELSON, P.A.

Dated: September 7, 2010    By: /s/Jennifer Rood
                                Jennifer Rood BNH 01395
                                670 N. Commercial St., Ste. 108
                                PO Box 1120
                                Manchester, NH 03105-1120
                                603-623-8700
                                jrood@bssn.com