UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW HAMPSHIRE

FILED 2011 FEB 28 A 9:08
CLERK OF THE BANKRUPTCY COURT
DISTRICT OF NH

In re )
)
TRIKEENAN TILEWORKS, INC. ) Chapter 11
) Case No's 10-13725 - JMD
and ) 10-13727 – JMD
)
TRIKEENAN TILEWORKS, INC )
OF NEW YORK )
Debtors. )

# DISCLOSURE STATEMENT REGARDING JOINT PLAN OR REORGANIZATION FOR THE DEBTORS SUBMITTED BY ROBERT SARVIS DATED FEBRUARY 25, 2011

NOW COMES Robert Sarvis, a secured creditor[1] of Trikeenan Tileworks, Inc. ("Trikeenan") and Trikeenan Tileworks, Inc. of New York (Trikeenan NY) (both referred herein as Debtors, and submits this Disclosure Statement regarding the Joint Plan of Reorganization for the Debtor (the "Plan") to all known creditors of the Debtor.

I. Background

Robert Sarvis was a consultant to Trikeenan during the spring of 2005 to August 2007. He has been a consultant to small and medium cap operations for over 15 years. He holds a MBA and DBA in finance and has specialized in corporate restructuring and turnaround situations. He has over 30 years of experience with large (over $1 Billion) as well as small manufacturing companies and has served in top executive operating positions. He has had multi-plant operations reporting to him and has supervised over 800 employees. He has extensive merger and acquisition experience.

When he joined Trikeenan as a consultant, it was struggling financially from inefficient and out of control operations. The operations of Trikeenan were little more than a hobby type operation with poor controls in place. Soon after his engagement the Powers asked him to review a potential acquisition of the Stueben Tileworks, Inc. in Hornell, New York. He evaluated that operation and the potential for Trikeenan. The Powers decided to pursue the acquisition of the Steuben Tileworks assets. Robert Sarvis put together a business and financial plan, and negotiated the terms of the acquisition and financing to complete that acquisition. In doing so he worked with each and every secured creditor listed in this bankruptcy proceeding. He spent many months at the Trikeenan NY facility and is fully knowledgeable with all aspects of the New York operation as well as the New Hampshire operation. He operates a private venture capital operation and has access to private equity capital. He works with associates who have long term manufacturing operating and financial experience.

---

[1] Capstan, Inc. assigned its outstanding contract and debt to Robert Sarvis.

1

The facilities acquired by the Trikeenan NY were virtually new and generally considered state of the art. It should have been a turnkey operation from the outset. However, the Powers lacked the knowledge and skills necessary to operate this production facility. Their representations in the Debtors' Disclosure Statement and Plan that 2006 was an initial ramp up and operations began in earnest in 2007 is inaccurate. Robert Sarvis was present during that time. The Powers ran the operation for days without control, generating massive amounts of scrap. The only reason for this was their lack of ceramic manufacturing knowhow and experience. Certainly, the decline in the building industry impacted on all manufacturing of building products, but in the spring of 2007 Robert Sarvis warned them and advised them they needed to bring in skilled managers for New York, consolidate *all* operations in the New York location to reduce overhead costs, and secure equity capital or in all likelihood the Company would face bankruptcy. He was critical of Kristin Power's ability to manage effectively and the often repeated harangues that occurred between she and her husband in front of employees. Had the Powers been a mind to bring in the expertise necessary to run the New York operation from the outset the operation could have been successful even in a down market. That was not the approach implemented by the Powers and the end result was predicted.

Debtors' Plan. The Trikeenan Plan from a financial standpoint is unsustainable, indeed, it is merely a road map to failure. Gross profits of 62%-65% are unrealistic, as are sales growth rates of better than 13% per year. New Hampshire operations were grossly inefficient in terms of labor utilization and suffered significant waste losses. The Powers only managed to make this operation "work" because it was very low volume and they were able to market irregular tile and variation in ceramic glazes as "handmade". Even at that, it is doubtful that Trikeenan ever generated profits -- inventory reserves were never established to account for high seconds and waste production. Trikeenan has a history of cash flow problems, late payments, and failure to pay vendors and resort to barter agreements to pay its vendors. All are indicative of an unprofitable and insolvent operation. At all times Trikeenan was severely under capitalized. When it comes to a volume operation like the New York operation it is unforgiving of poor management and requires significant management expertise, skills, and control. Neither of the Powers have those skills; their training is in design with very little formal education in ceramics and no technical ceramic training. They both graduated from the Rhode Island School of Design which has very limited ceramic education, none of which is in ceramic engineering and/or manufacturing. Further, the concept of having headquarters in New Hampshire and manufacturing in New York is unworkable, indeed untenable. The company is too small to justify bifurcation of executive management, financial controls, and sales staff. A successful manufacturing operation is key to success for this company and *requires* on site management. Further, the Powers' Plan is to rely on the cash flow of the company to achieve results without new equity investment. At best, this is naïve and provides absolutely no margin for error. If gross profits are only 5% below projection or at the level that Elgin Butler believes them to be the Debtors' Plan fails financially in year one. Couple that with the likelihood of lower than projected sales and this Plan fails by a significant margin. Given the Powers' lack of operating experience and complete lack of financial knowhow it is certain their plan will fail again and in a relatively short period of time. The secured creditors are ill advised to buy again into this approach and incapable and inexperienced management team.

Elgin Butler Plan. Elgin Butler has the operating experience and apparently the financial capabilities necessary to fulfill their plan. Overall, Elgin Butler's plan is similar to the Plan proposed herein, except that Elgin Butler does not offer to pay a fair amount for the assets to the secured creditors and unsecured creditors, nor does it seek to compensate the New York secured creditors for their patience and fortitude to make an operation work in Hornell, New York. Based on Elgin Butler's income projections the unsecured creditors get much less than ten cents on the dollar. In contrast, this Plan seeks to accomplish the objective of providing a fair dividend for the creditors relative to the value of the assets and results in a profitable and meaningful operation with growth potential.

II. Summary of Proposed Plan.

A. This plan consists of the following:

1) Set up a new New York corporation/LLC ("Trikeenan of New York."). Close the New Hampshire operations including the retail store and consolidate all operations in Hornell, NY.
2) Hire a top ceramic plant manager and staff.. Make necessary improvements and additions to the manufacturing operations. The facility budget is set at $600,000.
3) Build a sales and marketing force to support the new operations, including internet sales;
4) Interconnect with existing financial and accounting controls for other venture operations and utilize existing financial executives to control the new operation.
5) Once the operation is stable acquire or merge with other tile operations to achieve a sales base of $10 million or more within three-four years with headquarters located in Hornell, NY.

Secured debtors will be paid the fair value of their collateral. Reorganized Debtor will cure defaults under its lease and related PILOT payments to the Hornell Industrial Development Authority and the claim of the Steuben Trust Company secured by leased real estate will be satisfied via lease payments. The Reorganized Debtor will pay allowed priority unsecured claims in full on the Effective Date of the Plan. Unsecured creditors will receive 10% of their allowed claim plus a dividend as described below and in the Plan.

B. Proforma Income Statements and Balance Sheets - May 2011 through December 2013. (Exhibit B attached hereto.)

C. Administrative Claims: Allowed administrative claims will be paid in full in accordance with their terms or on such terms as the holder of the claim and the Plan Proponent may agree.

D. Classification of Claims and Equity Interests:

Unclassified claims are not impaired. Holders of Allowed Unclassified claims entitled to priority in accordance with Section 507(a)(2) and 503(b) of the Code shall be paid in full on the Effective Date or upon such date on which such claims becomes an Allowed Claim, which ever shall come later, or in accordance with such terms as may be agreed upon by the Debtor and each such holder of an Administrative Expense Claim.

Class One (NYBDC against Trikeenan New York) is impaired. Class One consists of the Allowed Secured Claim of NYBDC in the amount equal to the sum of the following amounts:

a. The value of the inventory, raw material and work in process of Trikeenan NY as of the Effective Date, plus
b. The sum of $188,050, being the appraised value of the machinery and equipment of Trikeenan NY as set forth in that certain appraisal conducted by Accuyval dated September 29, 2010, plus
c. Dividend as outlined below.

Class One claim will bear interest at 3.0% per annum and will be paid equal monthly payments on a ten year amortization schedule with a balloon on all outstanding principle due and payable three (3) years from the Effective Date. Payments will commence on the 60th day following the Effective Date.

The Class One Claim will remain secured by a first priority lien on the inventory, raw materials and work in process of Trikeenan NY existing on the Effective Date, and by a priority lien on the machinery and equipment to of Trikeenan NY existing on the Effective Date. (The lien shall not extend to the additional equipment that maybe contributed to Trikeenan NY by newly created Trikeenan NY.) The Plan Proponent shall have the option, in its discretion, of paying cash to the NYBDC within 60 days of the Effective Date in the amount established pursuant to subsection (a) above, in which event such inventory, raw materials and work in process shall be fee and clear of any liens and encumbrances or of turning over to NYBDC such inventory, raw materials and work in process, or any portion thereof, in which even no amount shall be payable to NYBDC on account of the property that has been turned over to NYBDC. If the Plan Proponent and the NYBDC are unable to agree upon the value of the inventory, raw materials and work in process, as of the Effective Date, the value shall be determined by the Court.

Class Two (Steuben Trust Company against Trikeenan NY) is impaired. The Class Two Claim shall consist of the amounts due to Steuben Trust Company by Trikeenan NY under that certain Promissory Note dated February 8, 2008 issued by City of the Hornell Industrial Development Authority in the amount of $1,025.000. The Class Two Claim shall be repaid in full by means of rental and cure payments due from Trikeenan NY under the Lease. As long as Reorganized Trikeenan NY is not in default under the Lease, Steuben Trust Company shall not disturb Reorganized Trikeenan NY's possession use and enjoyment of the premises described in the Lease.

Class Three (TD Bank against Trikeenan) is impaired. TDBank shall retain its liens and in full satisfaction of TD Bank's claims, Trikeenan shall pay TD Bank the sum of $137,250 that will bear interest at 3.0% per annum and will be paid equal monthly payments on a ten year amortization schedule with a balloon on all outstanding principle due and payable three (3) years from the Effective Date. On the effective date Reorganized Debtor shall deliver to TD Bank the TD Bank Note in the original principal amount of $137,250.

Class Four (Connecticut River Bank against Trikeenan) is impaired. In full satisfaction f the Class Four claim, Reorganized Debtor will pay Connecticut River Bank the sum of $1,605 within 60 days of the Effective Date. Any remaining balance due Connecticut River Bank shall be treated as unsecured pursuant to Section 506(a).

Class Five (Claims against the Debtors Entitled to Priority Under U.S.C. 507(a)(4) and (a)(5) are not impaired. Allowed Class Five claims shall be paid in full on the Effective date.

Class Six (Claims against the Debtor entitled to Priority under 11 U.S.C. 507(a)(8) are not impaired. Allowed Class Six claims shall be paid in full on the Effective Date.

Class Seven (General Unsecured Claims) are impaired. Class Seven shall consist of all Allowed unsecured Claims against the Debtors, including the under-secured portion of any secured Claim and any unsecured or under-secured guaranty obligations of the Debtor. Class Six shall include the Allowed Claim of Statewide Zone Capital Corporation of New York, on the basis that, pursuant to that certain Promissory Note dated April 8, 2008 in the amount of $44,950 also on the basis that, pursuant to Code Section 506, there is no collateral that secures that obligation.

Reorganized Debtor will pay the holders of Allowed Class Seven claims in full and final satisfaction a distribution of 10% of their claim within 180 days of the effective date, plus a Dividend on a prorate basis.

Class Eight (Existing Equity in the Debtor) are impaired. The Class Eight Interest shall be eliminated and the holder thereof shall retain nothing under this Plan.

Dividend will be paid each year for three years based by allocating the net profits less and losses generated in preceding year(s) of Reorganized Debtor on a pro rata basis to the above designated Classes One and Seven on a prorate basis. A payment will be made on or before March 31 of each calendar year following the first calendar year beginning as of the first January 1 following the Effective Date in the amount of 15% of net profits before income taxes and depreciation, but does not include profits of subsequently merged entities, subsidiaries, and/or affiliates. At no time will a Class be paid a dividend more that the total amount of the allowed claim of the Debtor less any structured payment made pursuant to Class One or Seven, projected to be about $80,000 in total

E.  Executory Contracts

Reorganized Debtor will assume all those executory contracts listed on Exhibit A to the Plan. This includes the Lease with the Hornell Industrial Development Authority, PILOT Agreement with the Hornell Industrial Development Authority. Reorganized Debtor will cure all defaults under the PILOT Agreement within 60 days of the Effective Date. Except as set forth on Exhibit A below and as set forth above, Reorganized Debtor shall reject all unexpired leases and executory contracts.

## Exhibit A

A. Lease Agreement by and among City of Hornell Industrial Development Agency as landlord and Trikeenan NY dated February 1, 2006. Cure Terms: Arrearages under the Lease will be cured in equal monthly payments over three years with the fist payment coming due following the Effective Date.
B. Payment in Lieu of Tax ("PILOT") Agreement by an among Trikeenan NY and the City of Hornell Industrial Development Agency. Cure Terms: Arrearages under the PILOT Agreement will be cured in full within 60 days of the Effective Date.

F.  Bar Date

The final date for filing of proof of claim with respect to any Claim which (a) arose before the Petition Date and was listed and disputed, contingent or unliquidated Claim in Debtor's scheduled liabilities previously filed with the Bankruptcy Court or (b) was classified in Debtor's scheduled liabilities in a manner or assigned an amount with which the respective holder of such Claim disagrees is/was February 28, 2011 for claims held by Governmental Units and December 28, 2010 for all other Claims. No proof of claim is required to be filed if the claimant agrees with the amount and characterization of the Claim as set forth on a Debtor's scheduled liabilities. Claims arising out of the rejection of an executory contact must be filed no later than (30) calendar days following the entry of the Order of the Bankruptcy Court approving rejection of the executory contract.

G.  Ownership and Management

On the Effective Date, all existing equity in the Reorganized Debtor shall be eliminated and new Trikeenan NY shall become the sole owner of the Reorganized Debtor. The existing officers and directors of the Debtors will also cease to hold office as of the Effective Date and will be replaced as follows:

Board of Directors: Robert Sarvis and Steven Goodhue.
President: Robert Sarvis
Treasurer: Steven Goodhue

H.  Voting Procedures and Requirements for Acceptance of Confirmation of Plan

   1.  Ballots and Voting Deadline

   One or more ballots (and return envelopes) for voting to accept or reject the Plan are enclosed with each copy of the Disclosure Statement that has been mailed to a creditor entitled to vote.
   The Bankruptcy Court has directed that to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be received by the Debtor no later than _____, 2011 at 5:00 p.m. at the following address:

   Dr. Robert Sarvis
   Capstan, Inc.
   11 Vesper Lane
   Nantucket, MA 02554

   2.  Claims and Interests Entitled to Vote

   Classes of Claims that are not "impaired" under the Plan are deemed to have accepted the Plan and need not vote on the Plan. Any creditor whose Claim is impaired under the Plan is entitled to vote if either (1) such holder is one whose Claim is scheduled by the Debtors (and such Claim is not scheduled as disputed, contingent or unliquidated) or (2) such holder has timely filed objection by the Plan or an order of the Bankruptcy Court, and (b) has not been denied by a Final Order.
   A creditor holding a disputed Claim is not entitled to vote on account of such disputed Claim unless, upon application for such creditor, the Bankruptcy Court temporarily allows the disputed Claim in an amount that it deems proper for purposes of voting to accept or reject the Plan. Such application must be heard and determined by the Bankruptcy Court on or before the hearing on confirmation of the Plan.
   Any creditor or holder of an equity interest that is to receive no distribution under the Plan on account of its Allowed Claim or Allowed equity interest is deemed to reject the Plan and. Therefore is not entitled to vote on the Plan. Furthermore, a vote of any Creditor may be disregarded if the Bankruptcy Court determines that such a vote was not solicited or procured in good faith and in accordance with the Code.

   3.  Impairment Under the Plan

   Under Code Section 1124, a class of Claims or interests is "impaired" under the plan of reorganization unless such plan pays in full, in cash, each Claim or interest in such class or otherwise leaves unaltered the legal, equitable and contractual rights of each holder of a Claim or interest in such class, other than by curing defaults or reinstating maturities.
   Classes One, Two, Three, Four, and Seven are impaired under the Plan and holders of Allowed Claims in those Classes are entitled to vote to accept the Plan. Holders of Class Eight Equity Interest are deemed to reject the Plan and do not vote on the Plan.

   4.  Acceptance of the Plan

   The Code defines acceptance of a plan of reorganization by a class of creditors as acceptance by creditors holding two-thirds in dollar amount and a majority in number of the

Claims in such class, but for that purpose counts only those creditors that actually cast ballots. Holders of Claims that fail to vote are not counted as either accepting or rejecting the plan. As described further below in paragraph 6 (Confirmation"), the Plan may be confirmed without the acceptance of all classes of creditors if certain requirements are met.

5. Best Interests Test

The Code provides the Plan will not be confirmed, regardless of whether anyone objects to confirmation, unless the Bankruptcy Court first finds the Plan is in the "best interests" of all classes of Claims or equity interests that are impaired. The "best interest test" will be satisfied in this Case by a finding by the Bankruptcy Court that either (1) all holders of impaired Claims or equity interests have accepted the Plan, or (2) the Plan provided a holder that has not accepted the Plan with a recovery at least equal in value to the recovery such holder would receive if the Debtor was liquidated under Chapter 7 of the Code. The Plan Proponent believes that the Plan is in the best interest of each Class of holders of Claims and Interest that are impaired under the Plan.

The liabilities of the Debtor as of November 30, 2010 were $3,425,708 of which $2,374,126 million was secured, $878,881 were unsecured, $34,467 were priority unsecured, and $138,234 were post petition trade debt. In contrast, the assets as of the same date totaled $947,326; $120,000 in cash, $110,000 in accounts receivables, $354,043 was in inventory, and $343,283 was in machinery and equipment. Intangible assets were unknown.[2]

Robert Sarvis believes that liquidation of the above assets would generate not more than $120,000 for the equipment and could be substantially less. The ceramic furnace in New York probably will generate no value and probably will cost for removal. Liquation of accounts receivable will lose 50% to 60% their value. Inventories, because of their specialized nature or in process status will have a value not more than 20%. The Debtor has no intangible assets of value. Therefore, a liquidation of the Debtor under Chapter 7 will generate not more than $240,000 or less than 10% of the secured claims. Therefore, all parties in interest in this proceeding will receive better treatment under the Plan proposed by the Debtors by Robert Sarvis than they would receive in a liquidation of the Debtor under Chapter 7 of the Bankruptcy Code.

6. Confirmation

Code Section 1128 (a) requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of the Plan (the "Confirmation Hearing"). Code Section 1128(b) provides that nay party in interest may object to confirmation of a plan.

By order of the Bankruptcy Court entered on _____, 2011, the Confirmation Hearing has been scheduled for _____, 2011 at the United States Bankruptcy Court, District of New Hampshire, at _____ a.m. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing or any adjournment of that hearing. Any objection to confirmation must be made in writing, filed with the Bankruptcy Court and served on all parties who have filed a demand for receipt of papers under Bankruptcy Rule 2002(i) and on Dr. Robert Sarvis, 11 Vesper Lane, Nantucket, MA 02554, on or before _____, 2011.

---

[2] Financial data referenced in this paragraph is derived from the Debtor's Monthly Operating Reports for the period ending November 30, 2010.

7

Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014. Unless an objection of confirmation is timely served and filed, it will not be considered by the Bankruptcy Court.

At the Confirmation Hearing, the Bankruptcy Court must determine whether the requirements of Code Section 1129 have been satisfied and, upon demonstration of such compliance, the Bankruptcy Court will enter the Confirmation Order.

Debtors believe that the Plan satisfies all of the statutory requirements of Chapter 11 of the Code, that Debtors have complied or will have complied prior to the Confirmation Hearing with all of the requirements of Chapter 11, and the Plan is proposed in good faith.

Debtors believe that the holder of each Claim impaired under the Plan will receive on and/or after the Effective Date a dividend in amount not less than the amount likely to be received if Debtor was liquidated in a case under Chapter 7 of the Code, and that the Bankruptcy Court will so determine at the Confirmation Hearing.

If a Creditor or equity interest holder does not believe that the Plan satisfies all of the requirements set forth in Code Section 1129, such Creditor or equity holder should consult with legal counsel.

DATED: February 25, 2011

Respectfully submitted,

Robert Sarvis, secured creditor
11 Vesper Lane
Nantucket, MA 02554
603-540-4882
rhsarivs@comcast.net

# EXHIBIT B

## PROFORMA INCOME STATEMENT AND BALANCE SHEET
## TRIKEENAN TILEWORKS NY
## Period May 1, 2010 - December 31, 2013

### Proforma Income Statement

| | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | 2011 Year |
|---|---|---|---|---|---|---|---|---|---|
| Gross Sales | 120,000 | 150,000 | 180,000 | 185,000 | 210,000 | 220,000 | 160,000 | 160,000 | 1,385,000 |
| Cost of Goods Sold | 54,000 | 67,500 | 77,400 | 79,550 | 88,200 | 92,400 | 72,000 | 72,000 | 603,050 |
| Gross Margin | 66,000 | 82,500 | 102,600 | 105,450 | 121,800 | 127,600 | 88,000 | 88,000 | 781,950 |
| % Gross Margin | 55.0% | 55.0% | 57.0% | 57.0% | 58.0% | 58.0% | 55.0% | 55.0% | 56.5% |
| Sales, Gen & Admin | 80,000 | 90,000 | 95,400 | 95,550 | 96,300 | 96,600 | 94,800 | 94,800 | 743,450 |
| Net Operating Income | (14,000) | (7,500) | 7,200 | 9,900 | 25,500 | 31,000 | (6,800) | (6,800) | 38,500 |
| Plan Strucured Payments | 0 | 0 | 202,000 | 0 | 0 | 90,000 | 0 | 0 | 292,000 |
| Amort/Dep Expense | 2,550 | 2,550 | 2,550 | 2,550 | 3,500 | 3,500 | 3,500 | 3,500 | 24,200 |
| Interest Expense | 1,627 | 1,627 | 1,627 | 2,127 | 2,127 | 2,127 | 2,127 | 2,127 | 15,512 |
| Net Income BT | (18,177) | (11,677) | (198,977) | 5,223 | 19,874 | (64,627) | (12,427) | (12,427) | (293,212) |

| | Jan | Feb | Mar | Apr | May | Jun | Jul | 2012 |
|---|---|---|---|---|---|---|---|---|
| Gross Sales | 135,000 | 170,000 | 185,000 | 210,000 | 170,000 | 220,000 | 220,000 | |
| Cost of Goods Sold | 63,450 | 76,500 | 83,250 | 88,200 | 74,800 | 92,400 | 92,400 | |
| Gross Margin | 71,550 | 93,500 | 101,750 | 121,800 | 95,200 | 127,600 | 127,600 | |
| % Gross Margin | 53.0% | 55.0% | 55.0% | 58.0% | 56.0% | 58.0% | 58.0% | |
| Sales, Gen & Admin | 94,050 | 95,100 | 95,550 | 96,300 | 95,100 | 96,600 | 96,600 | |
| Net Operating Income | (22,500) | (1,600) | 6,200 | 25,500 | 100 | 31,000 | 31,000 | |
| Plan Strucured Payments | 0 | 0 | 5,775 | 0 | 0 | 0 | 0 | |
| Amort/Dep Expense | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | |
| Interest Expense | 2,127 | 2,127 | 2,127 | 2,127 | 2,127 | 2,127 | 2,127 | |
| Net Income BT | (28,127) | (7,226) | (5,201) | 19,874 | (5,526) | 25,374 | 25,374 | |

### Proforma Blance Sheet

#### Assets

| | Opening Balance | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | 2011 |
|---|---|---|---|---|---|---|---|---|---|---|
| Cash | 0 | 138,274 | 126,047 | 124,961 | 114,924 | 132,358 | 119,521 | 115,175 | 106,248 | 106,248 |
| Acts Receivable (net) | 100,000 | 166,000 | 182,500 | 199,000 | 201,750 | 215,500 | 221,000 | 188,000 | 188,000 | 188,000 |
| Inventories (net) | 20,000 | 25,000 | 25,750 | 25,900 | 25,925 | 26,050 | 26,100 | 25,800 | 25,800 | 25,800 |
| Prepaid and Other | 40,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 |
| Current Assets | 160,000 | 379,274 | 384,297 | 399,861 | 392,599 | 423,908 | 416,621 | 378,975 | 370,048 | 370,048 |
| Plant and Equipment | 188,000 | 205,000 | 205,000 | 205,000 | 420,000 | 420,000 | 420,000 | 420,000 | 420,000 | 420,000 |
| Accum Dep | | (2,550) | (5,100) | (7,650) | (10,200) | (13,700) | (17,200) | (20,700) | (24,200) | (24,200) |
| Total Assets | 348,000 | 581,724 | 584,197 | 597,211 | 802,399 | 830,208 | 819,421 | 778,275 | 765,848 | 765,848 |

#### Liabilities

| | Opening Balance | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | 2011 |
|---|---|---|---|---|---|---|---|---|---|---|
| Acts Payable | 0 | 64,600 | 78,750 | 290,740 | 90,705 | 98,640 | 192,480 | 83,760 | 83,760 | 83,760 |
| Working Capital Line | 0 | 0 | 0 | 0 | 200,000 | 200,000 | 160,000 | 240,000 | 240,000 | 240,000 |
| Other Current Liab | 0 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| Current Liabilities | 0 | 74,600 | 88,750 | 300,740 | 300,705 | 308,640 | 362,480 | 333,760 | 333,760 | 333,760 |
| Long Term Debt | 325,300 | 325,300 | 325,300 | 325,300 | 425,300 | 425,300 | 425,300 | 425,300 | 425,300 | 425,300 |
| Total Liabilities | 325,300 | 399,900 | 414,050 | 626,040 | 726,005 | 733,940 | 787,780 | 759,060 | 759,060 | 759,060 |

#### Equities

| | Opening Balance | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | 2011 |
|---|---|---|---|---|---|---|---|---|---|---|
| Capital Stock | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Paid-In Capital | 21,700 | 199,000 | 199,000 | 199,000 | 299,000 | 299,000 | 299,000 | 299,000 | 299,000 | 299,000 |
| Retained Earnings | 0 | 0 | (18,177) | (29,853) | (228,830) | (223,606) | (203,733) | (268,359) | (280,786) | 0 |
| Net Income | 0 | (18,177) | (11,677) | (198,977) | 5,223 | 19,874 | (64,627) | (12,427) | (12,427) | (293,212) |
| Total Liabilites and Equity | 348,000 | 581,724 | 584,197 | 597,211 | 802,399 | 830,208 | 819,421 | 778,275 | 765,848 | 765,848 |

| | Jan | Feb | Mar | Apr | May | Jun | Jul |
|---|---|---|---|---|---|---|---|
| Cash | 47,652 | 36,455 | 18,369 | 26,697 | 34,571 | 31,834 | 10,708 |
| Acts Receivable (net) | 174,250 | 193,500 | 201,750 | 215,500 | 193,500 | 221,000 | 221,000 |
| Inventories (net) | 25,675 | 25,850 | 25,925 | 26,050 | 25,850 | 26,100 | 26,100 |
| Prepaid and Other | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 |
| Current Assets | 297,577 | 305,805 | 296,044 | 318,247 | 303,921 | 328,934 | 307,808 |
| Plant and Equipment | 420,000 | 420,000 | 440,000 | 440,000 | 440,000 | 440,000 | 440,000 |
| Accum Dep | (27,700) | (31,200) | (34,700) | (38,200) | (41,700) | (45,200) | (48,700) |
| Total Assets | 689,877 | 694,605 | 701,344 | 720,047 | 702,221 | 723,734 | 699,108 |
| Acts Payable | 75,915 | 87,870 | 99,810 | 98,640 | 86,340 | 102,480 | 102,480 |
| Working Capital Line | 200,000 | 200,000 | 200,000 | 200,000 | 200,000 | 180,000 | 130,000 |
| Other Current Liab | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| Current Liabilities | 285,915 | 297,870 | 309,810 | 308,640 | 296,340 | 292,480 | 242,480 |
| Long Term Debt | 425,300 | 425,300 | 425,300 | 425,300 | 425,300 | 425,300 | 425,300 |
| Total Liabilities | 711,215 | 723,170 | 735,110 | 733,940 | 721,640 | 717,780 | 667,780 |
| Capital Stock | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Paid-In Capital | 299,000 | 299,000 | 299,000 | 299,000 | 299,000 | 299,000 | 299,000 |
| Retained Earnings | (293,212) | (321,339) | (328,565) | (333,767) | (313,893) | (319,420) | (294,046) |
| Net Income | (28,127) | (7,226) | (5,201) | 19,874 | (5,526) | 25,374 | 25,374 |
| Total Liabilites and Equity | 689,877 | 694,605 | 701,344 | 720,047 | 702,221 | 723,734 | 699,108 |

# EXHIBIT B

## PROFORMA INCOME STATEMENT AND BALANCE SHEET
## TRIKEENAN TILEWORKS NY
### Period May 1, 2010 - December 31, 2013

### Income Statement - 2012

| | Aug | Sep | Oct | Nov | Dec | 2012 Year |
|---|---|---|---|---|---|---|
| | 230,000 | 250,000 | 180,000 | 180,000 | 180,000 | 2,330,000 |
| | 96,600 | 105,000 | 81,000 | 81,000 | 81,000 | 1,015,600 |
| | 133,400 | 145,000 | 99,000 | 99,000 | 99,000 | 1,314,400 |
| | 58.0% | 58.0% | 55.0% | 55.0% | 55.0% | 56.4% |
| | 96,900 | 97,500 | 95,400 | 95,400 | 95,400 | 1,149,900 |
| | 36,500 | 47,500 | 3,600 | 3,600 | 3,600 | 164,500 |
| | 0 | 0 | 0 | 0 | 0 | 5,775 |
| | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 42,000 |
| | 2,127 | 2,127 | 2,127 | 2,127 | 2,127 | 25,518 |
| | 30,874 | 41,874 | (2,026) | (2,026) | (2,026) | 91,207 |

### Income Statement - 2013

| | Jan | Feb | Mar | Apr | May | Jun | July | Aug | Sep | Oct | Nov | Dec | 2013 Year |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 140,000 | 190,000 | 200,000 | 245,000 | 190,000 | 245,000 | 245,000 | 245,000 | 245,000 | 180,000 | 180,000 | 180,000 | 2,485,000 |
| | 63,000 | 83,600 | 84,000 | 102,900 | 81,700 | 102,900 | 102,900 | 102,900 | 102,900 | 79,200 | 81,000 | 81,000 | 1,068,000 |
| | 77,000 | 106,400 | 116,000 | 142,100 | 108,300 | 142,100 | 142,100 | 142,100 | 142,100 | 100,800 | 99,000 | 99,000 | 1,417,000 |
| | 55.0% | 56.0% | 58.0% | 58.0% | 57.0% | 58.0% | 58.0% | 58.0% | 58.0% | 56.0% | 55.0% | 55.0% | 57.0% |
| | 94,200 | 95,700 | 96,000 | 97,350 | 95,700 | 97,350 | 97,350 | 97,350 | 97,350 | 95,400 | 95,400 | 95,400 | 1,154,550 |
| | (17,200) | 10,700 | 20,000 | 44,750 | 12,600 | 44,750 | 44,750 | 44,750 | 44,750 | 5,400 | 3,600 | 3,600 | 262,450 |
| | 0 | 0 | 24,675 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 24,675 |
| | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 42,000 |
| | 2,127 | 2,127 | 2,127 | 2,127 | 2,127 | 2,127 | 2,127 | 2,127 | 2,127 | 2,127 | 2,127 | 2,127 | 25,518 |
| | (22,827) | 5,074 | (10,302) | 39,124 | 6,973 | 39,124 | 39,124 | 39,124 | 39,124 | (226) | (2,026) | (2,026) | 170,257 |

### Balance Sheet - 2012

| | Aug | Sep | Oct | Nov | Dec | 2012 |
|---|---|---|---|---|---|---|
| | 13,371 | 25,325 | 23,628 | 25,102 | 26,575 | 26,575 |
| | 226,500 | 237,500 | 199,000 | 199,000 | 199,000 | 199,000 |
| | 26,150 | 26,250 | 25,900 | 25,900 | 25,900 | 25,900 |
| | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 |
| | 316,021 | 339,075 | 298,528 | 300,002 | 301,475 | 301,475 |
| | 440,000 | 440,000 | 440,000 | 440,000 | 440,000 | 440,000 |
| | (52,200) | (55,700) | (59,200) | (62,700) | (66,200) | (66,200) |
| | 703,821 | 723,375 | 679,328 | 677,302 | 675,275 | 675,275 |
| | 106,320 | 114,000 | 91,980 | 91,980 | 91,980 | 91,980 |
| | 100,000 | 70,000 | 50,000 | 50,000 | 50,000 | 50,000 |
| | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| | 216,320 | 194,000 | 151,980 | 151,980 | 151,980 | 151,980 |
| | 425,300 | 425,300 | 425,300 | 425,300 | 425,300 | 425,300 |
| | 641,620 | 619,300 | 577,280 | 577,280 | 577,280 | 577,280 |
| | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| | 299,000 | 299,000 | 299,000 | 299,000 | 299,000 | 299,000 |
| | (268,673) | (237,799) | (195,926) | (197,952) | (199,979) | (293,212) |
| | 30,874 | 41,874 | (2,026) | (2,026) | (2,026) | 91,207 |
| | 703,821 | 723,375 | 679,328 | 677,302 | 675,275 | 675,275 |

### Balance Sheet - 2013

| | Jan | Feb | Mar | Apr | May | Jun | July | Aug | Sep | Oct | Nov | Dec | 2013 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 13,009 | 12,672 | 25,416 | 35,669 | 7,258 | 38,766 | 81,390 | 124,013 | 166,637 | 184,265 | 187,359 | 188,832 | 188,832 |
| | 177,000 | 204,500 | 210,000 | 234,750 | 204,500 | 234,750 | 234,750 | 234,750 | 234,750 | 199,000 | 199,000 | 199,000 | 199,000 |
| | 25,700 | 25,950 | 26,000 | 26,225 | 25,950 | 26,225 | 26,225 | 26,225 | 26,225 | 25,900 | 25,900 | 25,900 | 25,900 |
| | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 |
| | 265,709 | 293,122 | 311,416 | 346,644 | 287,708 | 349,741 | 392,365 | 434,988 | 477,612 | 459,165 | 462,259 | 463,732 | 463,732 |
| | 440,000 | 440,000 | 440,000 | 440,000 | 440,000 | 440,000 | 440,000 | 440,000 | 440,000 | 440,000 | 440,000 | 440,000 | 440,000 |
| | (69,700) | (73,200) | (76,700) | (80,200) | (83,700) | (87,200) | (90,700) | (94,200) | (97,700) | (101,200) | (104,700) | (108,200) | (108,200) |
| | 636,009 | 659,922 | 674,716 | 706,444 | 644,008 | 702,541 | 741,665 | 780,788 | 819,912 | 797,965 | 797,559 | 795,532 | 795,532 |
| | 75,540 | 94,380 | 119,475 | 112,080 | 92,670 | 112,080 | 112,080 | 112,080 | 112,080 | 90,360 | 91,980 | 91,980 | 91,980 |
| | 50,000 | 50,000 | 50,000 | 50,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| | 135,540 | 154,380 | 179,475 | 172,080 | 102,670 | 122,080 | 122,080 | 122,080 | 122,080 | 100,360 | 101,980 | 101,980 | 101,980 |
| | 425,300 | 425,300 | 425,300 | 425,300 | 425,300 | 425,300 | 425,300 | 425,300 | 425,300 | 425,300 | 425,300 | 425,300 | 425,300 |
| | 560,840 | 579,680 | 604,775 | 597,380 | 527,970 | 547,380 | 547,380 | 547,380 | 547,380 | 525,660 | 527,280 | 527,280 | 527,280 |
| | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| | 299,000 | 299,000 | 299,000 | 299,000 | 299,000 | 299,000 | 299,000 | 299,000 | 299,000 | 299,000 | 299,000 | 299,000 | 299,000 |
| | (202,005) | (224,832) | (219,758) | (230,060) | (190,936) | (183,963) | (144,839) | (105,716) | (66,592) | (27,468) | (27,695) | (29,721) | (202,005) |
| | (22,827) | 5,074 | (10,302) | 39,124 | 6,973 | 39,124 | 39,124 | 39,124 | 39,124 | (226) | (2,026) | (2,026) | 170,257 |
| | 636,009 | 659,922 | 674,716 | 706,444 | 644,008 | 702,541 | 741,665 | 780,788 | 819,912 | 797,965 | 797,559 | 795,532 | 795,532 |