UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| TRIKEENAN TILEWORKS INC., | ) | |
| | ) | Chapter 11 |
| and | ) | Case No's    10-13725 - JMD |
| | ) | |
| TRIKEENAN TILEWORKS INC | ) | 10-13727 - JMD |
| OF NEW YORK | ) | |
| Debtors. | ) | |
| | ) | |

**DISCLOSURE STATEMENT RESPECTING**
**FIRST AMENDED JOINT PLAN OF REORGANIZATION FOR THE DEBTORS**
**SUBMITTED BY ELGIN BUTLER , INC.**
**DATED FEBRUARY 2, 2011**

## I.    INTRODUCTION

Elgin Butler, Inc. (the "**Plan Proponent**" or "**Elgin Butler**") a creditor of Trikeenan Tileworks Inc. ("**Trikeenan**") and Trikeenan Tileworks Inc. of New York ("**Trikeenan New York**" and Trikeenan, each a "**Debtor**" and jointly and severally the "**Debtors**"), submits this Disclosure Statement respecting the First Amended Joint Plan of Reorganization for the Debtors (the "**Plan**") to all known creditors of the Debtors.

### A.    Executive Summary of the Plan

Pursuant to the Plan, the Elgin Butler Company will become the sole owner of the Debtors and the Debtors will be merged, with Trikeenan New York as the surviving entity.

The Plan provides that the Debtors' secured creditors in New York (New York Business Development Corporation) and New Hampshire (TDBank, N.A.) will be paid the fair value of their collateral. The Plan further provides that Trikeenan New York will assume and cure defaults under its lease and related Payment in Lieu of Taxes Agreement ("PILOT Agreement") with the Hornell Industrial Development Authority and that the claim of the Steuben Trust Company that is secured by the leased real estate in New York will be satisfied in full through the lease payments and cure payments. The Plan also provides that Steuben Trust Company will be paid the fair value of the account receivable due from Fired Earth as of the Effective Date. The Reorganized Debtors will also assume and cure defaults, if any, under the month to month lease for the showroom and manufacturing space in Keene, New Hampshire.

Unsecured creditors of the Debtors will be entitled to share in the profits of the Reorganized Trikeenan New York, as further described in this Disclosure Statement and in the Plan.

Elgin Butler is a successful tile manufacturer and distributor whose managers have substantial experience in both ceramic and thin-tile manufacturing, sales, marketing and operations. Elgin Butler plans to invest approximately $800,000 in the reorganized Trikeenan New York. The investment will include the costs of consolidation of the Debtors' operations, the cost of machinery and equipment to be added to the Debtor's manufacturing operations in New York, additional salaries to be paid to management and employees in the New York plant, the reorganization of the operations of the New York manufacturing plant and the cost of covering negative cash flow until operations are turned around. Elgin Butler has the financial strength, management talent and extensive ceramic market experience to reorganize the Debtors into a profitable business for the first time since the New York plant was purchased by the Debtors.

This Plan does not seek to reorganize Trikeenan Holdings, Inc. ("Holdings"). According to the bankruptcy schedules filed by Holdings, the only material assets of Holdings are the shares in the Debtors and those shares will be cancelled pursuant to the Plan.

## B. Definitions and Exhibits

The terms defined in the Plan and not otherwise defined in this Disclosure Statement shall have the meanings given to them in the Plan. Where applicable and unless otherwise defined in the Plan or in this Disclosure Statement, the terms used in this Disclosure Statement shall have the meanings given to them in the Code.

All Exhibits to this Disclosure Statement, including the Plan, are incorporated into and made a part of this Disclosure Statement.

## C. Notice to Creditors and Holders of Equity Interests

Scope of Plan. The Plan describes the treatment afforded to all holders of Claims against the Debtors and all holders of Interests in the Debtors. The Plan divides the holders of Claims and Interests into separate classes and describes the treatment afforded each class. The Plan is a legal document that, once confirmed by the Court, will bind all holders of Claims and Interests pursuant to its terms.

Purpose of Disclosure Statement. The purpose of this Disclosure Statement is to set forth information that: (a) outlines in summary fashion the operations of the Debtor in Chapter 11; (b) summarizes the Plan provisions and alternatives to the Plan; (c) advises creditors of their rights under the Plan; (d) provides creditors with information necessary to make informed decisions as to whether to accept the Plan; and (e) enables the Bankruptcy Court to determine whether the Plan complies with the necessary Code provisions and should, therefore, be confirmed.

Source of Information for the Disclosure Statement and Plan. Except where specifically stated otherwise, the portions of this Disclosure Statement describing the Debtors and the

operations of the Debtors have been prepared from the Debtors' books and records and pleadings filed with the Court. No representations concerning Debtors or the Plan are authorized other than as set forth in this Disclosure Statement. The Plan Proponent does not guarantee the accuracy of the information provided by the Debtors. The creditors and their representatives should undertake full investigation in order to fully confirm this information. Moreover, the terms of the Plan control in the event of any inconsistency between this Disclosure Statement and the Plan.

Solicitation of Votes. By order entered on _____, 2011, the Bankruptcy Court approved this Disclosure Statement as containing adequate information respecting the Plan. However, the Bankruptcy Court has not yet ruled on the merits of the Plan. You should, therefore, carefully read this Disclosure Statement and the Plan in their entirety prior to voting on the Plan.

It is strongly recommended that you and your legal counsel review the Plan and Disclosure Statement carefully and determine whether to accept the Plan based on your own evaluation and judgment.

For purposes of voting on the Plan, you should not rely on any information relating to the Debtors or their business other than information contained in this Disclosure Statement. Therefore, please read this Disclosure Statement, including the Plan in its entirety. Note that while this Disclosure Statement summarizes the terms of the Plan for your convenience, the Plan itself qualifies all such summaries. If there are any inconsistencies between the Plan and the summary of the Plan set forth in the Disclosure Statement, the provisions of the Plan shall control.

## D. Disclosure Statement Exhibits and Enclosures

Accompanying this Disclosure Statement are the following documents:

1. Operating Projections and Balance Sheet. The projected results of operations and accompanying balance sheets for April, 2011 through December 2013 are attached hereto as Exhibit B. The projections are just that; projections are not guaranteed results. Exhibit B also includes a schedule of required and/or projected payments under the Plan.

2. Disclosure Statement Order. A copy of the order of the Bankruptcy Court entered on March __, 2011 approving this Disclosure Statement and, among other things, establishing procedures for voting on the Plan, and scheduling a hearing to consider confirmation of the Plan and the deadline for objecting to confirmation of the Plan (the "Disclosure Statement Order") is attached hereto as Exhibit C;

3. Notice of Confirmation Hearing. A copy of the notice of the deadline for submitting ballots to accept or reject the Plan, and among other things, the date, time, and place of the Confirmation Hearing and the deadline for filing objections to confirmation of the Plan (the "Notice of Confirmation Hearing") is attached hereto as Exhibit D; and

4.     _Ballots_. One or more ballots, and return envelopes, for voting to accept or reject the Plan, unless (a) your Claim is not impaired under the Plan, in which case you are deemed to have voted to accept the Plan, or (b) you are to receive no distribution under the Plan, in which case you are deemed to have voted to reject the Plan. In either case, you are not entitled to vote and have not been given a ballot. Section VI contains an explanation of which parties in interest are entitled to vote. All who are entitled to vote should do so. Only those who actually vote are counted when determining whether the Plan has been accepted by the requisite majority of creditors.

## II.     BACKGROUND

### A.     Debtors' Business

Trikeenan was formed approximately twenty years ago by Kristin and Stephen Powers, both ceramic artists, in Keene New Hampshire. After 16 years of operations, the business employed approximately 25 people and produced what is known as "Art Tile" from a single plant in New Hampshire. This tile was totally hand-made, hand glazed and cured in periodic gas and electric shuttle kilns using expensive propane or electricity. Costs of production for this tile were and remain very high, and consequently, it is sold in small quantities at very high prices – often as high as $40/foot, and usually it is sold direct to end-users because it is too expensive to be handled by distribution or "big-box" stores. This small business was viable and generated enough cash to cover its expenses and pay to its founders a modest salary.

Approximately four years ago, the founders formed Trikeenan New York and personally, along with Trikeenan, assumed all the debt and took over the single asset of the defunct business known as Steuben Tile Works. There was no discount applied to the debt, and both founders personally guaranteed payments to all the banks and New York State agencies that had loaned money to Steuben Tile Works. Also, since little or no equity was contributed, they incurred more debt to get the facility in operation and develop products for the market. It is important to note that although this was also a tile manufacturing facility, as was the facility in New Hampshire, the operation was entirely different and was designed to produce much lower cost "production tile" rather than Art Tile. Although the facility relied on pre-mixed clay, it formed the tile through industrial extrusion, cured it in a continuously operating "fast-fire" kiln and then used automated spray equipment to apply glazes. All of these processes were new to the management of Trikeenan.

As is evident from the financial performance of the business since the acquisition of Steuben Tile Works, Trikeenan was never able to come close to covering the costs of operation of the two facilities or the extraordinary debt service required of this small business. ~~Revenue had not reached $2 million and the business had close to $3.7 million in debt.~~ After losing over $300,000 in 2009, and even more on a cash basis, Trikeenan and Trikeenan New York were forced to file for reorganization to avoid loss of the Hornell facility through foreclosure by the Steuben Trust Company and eviction by the Hornell Industrial Development Authority. At that time, there were also defaults with all the major lenders~~, and payments to non-essential suppliers had been stretched to the limit.~~

4

The successful reorganization of the Debtors requires a substantial reduction in debt, an extensive investment in new equipment for the production plant, an extensive investment in product development, marketing and a national sales force, substantial reduction in operating costs through consolidation of operations, and the reconfiguration of the production process in the New York plant. (For example, the equipment in New York is not adequate to produce the product it needs to produce, and continues to operate with waste of over 20% while the industry average for "fast-fire" producers is around 3%.) These improvements will cost several hundred thousand dollars and the Debtors will continue to lose money until the improvements are implemented and new products are brought to market and sold. Elgin Butler does not believe the Debtors have the financial means, or industry contacts or experience, to successfully reorganize. Elgin Butler does have the means to invest in the Debtor's turn-around.

B.    **Elgin Butler Company**

Elgin Butler Company is a ceramic manufacturing and distribution Company based in Elgin, Texas and has been in continuous operation since 1873. Its operations consist of both manufacturing and distribution of thin-tile, structural tile and brick. Elgin Butler manufactures two lines of thin-tile and markets those under two different brands. One is an "Art-Tile" brand, McIntyre Tile, that is a direct competitor to Trikeenan and based in Healdsburg, California, and the other is a manufacturer of unglazed porcelain mosaics, sold exclusively in the commercial market and manufactured at the main plant in Elgin, Texas. Elgin Butler also owns a tile distributor and a masonry (brick and structural tile) products distributor both located in Austin, Texas and serving the commercial markets there.

The senior management of Elgin Butler has deep experience in the tile business having formerly run Florida Tile Industries when it was the second largest manufacturer and distributor of thin-tile and stone in North America. The CEO and owner of Elgin Butler, Mr. Matthew Galvez, was formerly the CEO of Florida Tile, the Vice President of Sales and Marketing of Elgin Butler, Mr. Doug McGlintchy, was formerly the Vice President of Sales and Marketing of Florida Tile and the Vice President of Manfacturing of EBC formerly ran the two largest manufacturing facilities for Florida Tile producing in excess of 40 million square feet of tile and trim annually.

Elgin Butler is today a profitable business and has grown to utilize 100% of its current capacity over the past 5 years, since the current ownership took over. The company is in good standing with its banks, its suppliers and its employees, who enjoy substantial benefits and share on a monthly basis in the profits of the Company.  Elgin Butler's unaudited, consolidated, results of operations for the 12 months ending December 31, 2010 show a pre-tax profit of $1,619, 269 on sales of $13,490,733.  The company's consolidated balance sheet shows positive net worth of $3,287,748 as of December 31, 2010.

Elgin Butler has offered in writing during the course of these reorganization proceedings to purchase the assets of the Debtors through a Court approved transaction that would be subject to higher and better offers. In other words, Elgin Butler offered to participate in a process that would obtain the highest market value for the Debtors' business. The offer of Elgin Butler would have set the floor for that value. The Debtors rejected the offers of Elgin Butler, declined to counteroffer and have discontinued negotiations. Elgin Butler does not believe that the

5

Debtors have the financial means to reorganize on their own. Accordingly, Elgin Butler believes that the Debtors' premature termination of negotiations is not in the best interests of the Debtors' creditors. Elgin Butler will move the Court for the appointment of a Trustee in this proceeding if it necessary to do so to protect the interests of creditors or in the event that the Debtors cease to operate their business in the ordinary course.

## III.   THE PLAN

### A.   Overview

Elgin Butler's plan for the turn-around of the Debtors centers on four strategies: The consolidation of New Hampshire manufacturing operations with the New York manufacturing operation; the reorganization of production operations in New York along with a substantial investment in equipment to be located in New York; investment in new personnel, including sales staff and the integration of Trikeenan New York into Elgin Butler's administrative back office functions.

Elgin Butler estimates that the cost of consolidation of New Hampshire production operations into New York will be approximately $160,000, but will result in annual savings in excess of $250,000. The savings are achieved primarily through the reduction in rental expense, the reduction in payroll costs and a reduction in the cost of utilities. Elgin Butler personnel have considerable experience in the consolidation of manufacturing operations.

The second element of the turn-around is the reorganization of the Hornell, New York manufacturing plant. Elgin Butler will acquire and contribute to Trikeenan New York the production equipment formerly utilized by Meredith Tile, in Canton, Ohio. The Meredith equipment consists of a new extruder, a dryer, a second glazing line and a mixing system. This equipment remains available for purchase by Elgin Butler. If for any reason Elgin Butler is unable to purchase the equipment, Elgin Butler is confident that suitable replacement equipment is available in the marketplace. Elgin Butler will also contribute additional tray cars, Rotocolor decorating equipment and other technical updates and improvements to the existing Trikeenan New York equipment. The cost of these additions and improvements, including the cost of rigging and transportation, is approximately $500,000. The equipment identified above will be an asset of the Reorganized Debtors and the Reorganized Debtors will not owe any debt to Elgin Butler on account of the contributed equipment. Elgin Butler (and not the Reorganized Debtors) expects to borrow approximately $75,000 from its lender to help finance the purchase of the equipment. That loan will be secured by a first priority lien on the contributed equipment, but only Elgin Butler will be liable for the repayment of that loan.

The third element of the turn-around is the additional of several new sales persons, an increase in e-marketing and advertising and the hiring of an experienced ceramic plant manager. Finally, Elgin Butler will integrate the Reorganized Trikeenan New York's costing, inventory

6

control and financial controls and reporting functions. Although Elgin Butler reserves the right to charge the Reorganized Trikeenan New York a commercially reasonable management fee for the provision of back-office functions, the Reorganized Trikeenan New York will pay salaries or other compensation only in commercially reasonable amounts for actual services rendered to it by its officers and directors.

The projections for the Reorganized Trikeenan New York under the ownership of Elgin Butler are attached hereto as Exhibit B. Those projections indicate that Elgin Butler will also have to support negative cash flow of the Reorganized Debtor to the extent of approximately $150,000. The total cash outlay by Elgin Butler to accomplish the turn-around of Trikeenan New York is expected to be $800,000. Elgin Butler has these funds budgeted and available from its cash on hand and available bank lines of credit.

The Plan provides that the Debtors' secured creditors in New York (New York Business Development Corporation) and New Hampshire (TDBank, N.A.) will be paid the fair value of their collateral. NYBDC will be given an interest bearing note in the amount equal to the value of its collateral which will be secured by the same collateral that presently secures its claim. TDBank will be paid the value of its collateral in cash on the Effective Date of the Plan. The Plan further provides that the Reorganized Trikeenan New York will assume and cure defaults under its lease and related Payment in Lieu of Taxes Agreement with the Hornell Industrial Development Authority and that the claim of the Steuben Trust Company that is secured by the leased real estate will be satisfied through the lease payments. The Reorganized Debtors will also assume and cure defaults under the lease for the showroom in Keene, New Hampshire. The Reorganized Debtor will pay allowed priority unsecured claims in full on the Effective Date of the Plan.

As described further below, holders of Allowed Unsecured Claims will be entitled to participate in the profits of the Reorganized Trikeenan New York earned during the period ending on December 31, 2013.

The Debtors have asked the Plan Proponent to clarify the treatment of the debenture holders. The Plan Proponent understands that the claims of the debenture holders are against Holdings and not the Debtors and therefore those claims are not addressed by this Plan. If for some reason the debenture holders have Allowed Claims against either or both of the Debtors, those claims shall be treated under Class Six, unsecured claims.

**B.    Administrative Claims**

The ordinary and necessary costs of operating the Debtors following the Chapter 11 filing, such as trade debt and payroll obligations, together with the allowed fees of the professionals retained by the Debtors are referred to as administrative claims. Allowed administrative claims will be paid in full by the Reorganized Debtors on the Effective Date or in accordance with their terms or on such other terms as the holder of the claim and the Plan Proponent may agree.

**C.    Classification of Claims and Equity Interests**

All Claims, as defined in this Plan and in § 101(5) of the Code, of whatever nature, whether or not scheduled or unliquidated, absolute or contingent, including all Claims arising from the rejection of leases and executory contracts, and all Equity Interests, and whether resulting in an Allowed Claim or not, shall be bound by the provisions of the Plan and are hereby classified as follows:

Unclassified Claims are not impaired. Holders of Allowed Unclassified claims entitled to priority in accordance with Sections 507(a)(2) and 503(b) of the Code shall be paid in full on the Effective Date or upon the date on which each such claim becomes an Allowed Claim, whichever shall come later, or in accordance with such terms as may be agreed upon by the Debtor and each such holder of an Administrative Expense Claim. For further clarity and avoidance of doubt, the holder of an Administrative Expense Claim as a consequence of the assumption by the Debtor of an executory contract shall be paid in accordance with the terms of the Court Order approving the assumption of the executory contract or as set forth in this Plan.

Class One (NYBDC against Trikeenan New York) is impaired. Class One consists of the Allowed Secured Claim of NYBDC in the amount equal to the sum of the following amounts:

    a.  The value of the inventory, raw materials and work in process of Trikeenan New York as of the Effective Date, plus

    b.  The sum of $188,050, being the appraised value of the machinery and equipment of Trikeenan New York as set forth in that certain appraisal conducted by Accuval dated September 29, 2010.

The Class One Claim will bear interest at 4.5% per annum and will be repaid in equal monthly payments on a ten year amortization schedule with a balloon of all outstanding principal due and payable five years from the Effective Date. Payments will commence on the 60th day following the Effective Date. The Class One Claim will remain secured by a first priority lien on the inventory, raw materials and work in process of Trikeenan New York existing on the Effective Date and by a first priority lien on the machinery and equipment of Trikeenan New York existing on the Effective Date. (The lien shall not extend to the additional equipment to be contributed to Trikeenan New York by the Plan Proponent). The Plan Proponent shall have the option, in its discretion, of paying cash to the NYBDC on the Effective Date in the amount established pursuant to subsection (a) above, in which event such inventory, raw materials and work in process shall be free and clear of any liens and encumbrances or of turning over to NYBDC such inventory, raw materials and work in process, or any portion thereof, in which event no amount shall be payable to NYBDC on account of the property that is turned over to NYBDC. If the Plan Proponent and NYBDC are unable to agree upon the value of the inventory, raw materials and work in process, as of the Effective Date, the value shall be determined by the Court.

3.1 Class Two Claim (Steuben Trust Company against Trikeenan New York) is impaired. The Class Two Claim shall consist of the amounts due to Steuben Trust Company by Trikeenan NY under that certain Promissory Note dated February 8, 2008 issued by the City of the Hornell Industrial Development Authority in the amount of $1,025,000 and under that certain Promissory Note dated April 8, 2008 in the amount of $44,950. The Class Two Claim arising under the

$1,025,000 Note shall be repaid in full by means of the cure of arrearages under the Lease and continuing rental payments due from Trikeenan New York under the Lease. As long as the Reorganized Trikeenan New York is not in default under the Lease, including the cure payments due under the Lease, Steuben Trust Company shall not disturb the Reorganized Trikeenan New York's possession, use and enjoyment of the premises described in the Lease. That portion of the Class Two Claim arising under the $44,950 note shall be paid an amount equal to 80% of the current account receivable due to the Debtors from Fired Earth as of the Effective Date. Payment shall be made in cash or cash equivalent on the Effective Date. The Fired Earth receivable shall be current to the extent that it is within sixty days of invoice date as of the Effective Date and as to which the account debtor thereon has not raised any defense, offset, dispute or other basis for delayed or reduced payment. To the extent that the Fired Earth receivable is not current, the Plan Proponent may turn that receivable over to Steuben Bank rather than paying Steuben Bank for the receivable.

Formatted: Font color: Auto

    Class Three (TDBank against Trikeenan) is impaired. TDBank shall have an Allowed Secured Claim equal to the sum of the following amounts:

 i. $40,000, being the value of the personal property of Trikeenan, other than cash and accounts; plus

 ii. The outstanding balance under the Line of Credit issued to Trikeenan.

Trikeenan shall pay the amount of the Allowed Class Three Claim in full on the Effective Date. A current account shall mean an account receivable of Trikeenan that is within sixty days of invoice date as of the Effective Date and as to which the account debtor thereon has not raised any defense, offset, dispute or other basis for delayed or reduced payment. Any account that is not a current account shall be turned over to TDBank. The Plan Proponent shall have the option, in its discretion, of turning over to TDBank any inventory, raw materials and work in process of Trikeenan, or any portion thereof, in which event no amount shall be payable to TDBank on account of the property that is turned over to TDBank. If the Plan Proponent and TDBank are unable to agree upon the value of the personal property of Trikeenan as of the Effective Date, the value shall be determined by the Court. Confirmation of the Plan shall constitute a finding by the Court that TDBank has a first priority perfected lien in all of the accounts receivable of Trikeenan, whether derived from the sale of product manufactured in New Hampshire or product manufactured in New York.

    Class Four (Claims against the Debtors Entitled to Priority Under 11 U.S.C. § 507(a)(4) and (a)(5) are not impaired. Allowed Class Four Claims shall be paid in full on the Effective Date.

    Class Five (Claims against the Debtors entitled to Priority under 11 U.S.C. § 507(a)(8) are not impaired. Allowed Class Five Claims shall be paid in full on the Effective Date.

    Class Six (General Unsecured Claims) are impaired. Class Six shall consist of all

Allowed unsecured Claims against the Debtors, including the under-secured portion of any secured Claim and any unsecured or under-secured guaranty obligations of either of the Debtors. Class Six shall include, without limitation, the Allowed Claim of Statewide Zone Capital Corporation of New York ("**SZCCNY**") and the Allowed Claim, if any, of Capstan, Inc., on the basis that, pursuant to Code Section 506, SZCCNY and Capstan, Inc. are unsecured creditors of the Debtors.

The Reorganized Debtors will pay the holders of Allowed Class Six Claims, pro rata, an amount equal to ten percent (10%) of the pre-tax profits of the Reorganized Debtors for the period from the Effective Date through December 31, 2013, determined in accordance with GAAP except that d. Depreciation expense will be added back in determining profits for the purpose of this calculation. Payments shall be due by March 31 on account of profits through the preceding December 31. Payment to each holder of an Allowed Claim in Class Six shall be accompanied by a profit and loss statement of the Debtors that also includes the calculations that support the payment. In the event that the Debtors believe that no payment is due, the Debtors shall nonetheless provide the profit and loss statement including the calculations that support that determination.

Based on the Plan Proponent's projections for the Reorganized Debtors, holders of Allowed Claims in Class Six will share, pro rata, approximately $150,000.

Class Seven Interests (Existing Equity in the Debtors) are impaired. The Class Seven Interests shall be eliminated and the holder thereof shall retain nothing under this Plan.

### D. Executory Contracts.

The Debtors shall assume all those executory contracts listed on Exhibit A to the Plan. At present, Exhibit A consists of the Lease with the Hornell Industrial Development Authority, the Payment in Lieu of Taxes Agreement both with the Hornell Industrial Development Authority and the Keene, New Hampshire showroom lease. The Reorganized Trikeenan New York will cure all defaults under the Hornell Lease over a period of three years following the Effective Date and will cure all defaults under the PILOT Agreement and the Keene, New Hampshire showroom lease within sixty (60) days of the Effective Date. Other than with respect to the Lease and the Payment in Lieu of Taxes Agreement, the Debtors shall have the right to amend Exhibit A for a period of thirty (30) days following the Effective Date of the Plan. Except as set forth on Exhibit A hereto and as set forth above, the Debtors shall reject all unexpired leases and executory contracts.

## IV. BAR DATE

The final date for the filing of a proof of claim with respect to any Claim which (a) arose before the Petition Date and was listed as a disputed, contingent or unliquidated Claim in a Debtor's scheduled liabilities previously filed with the Bankruptcy Court or (b) was classified in a Debtor's scheduled liabilities in a manner or assigned an amount with which the respective holder of such Claim disagrees is/was February 28, 2011 for claims held by Governmental Units and December 28, 2010 for all other Claims. No proof of claim is required to be filed if the claimant agrees with the amount and characterization of the Claim as set forth on a Debtor's

scheduled liabilities. Claims arising out of the rejection of an executory contract must be filed no later than thirty (30) calendar days following the entry of the Order of the Bankruptcy Court approving rejection of the executory contract.

## V.    OWNERSHIP AND MANAGEMENT

On the Effective Date, all existing equity in the Reorganized Debtors shall be eliminated and Elgin Butler shall become the sole owner of the Reorganized Debtors. The existing officers and directors of the Debtors will also cease to hold office as of the Effective Date and will be replaced as follows:

Board of Directors:   Matthew S. Galvez, Ken Bernstein, James Nichols, Doug McGlinchey, Don Belcher, Scott Fullerton;

| | |
|---|---|
| President: | Doug McGlinchey |
| Treasurer: | Ken Bernstein |

## VI.    VOTING PROCEDURES AND REQUIREMENTS FOR ACCEPTANCE OF CONFIRMATION OF THE PLAN

### A.    Ballots and Voting Deadline

One or more ballots (and return envelopes) for voting to accept or reject the Plan are enclosed with each copy of the Disclosure Statement that has been mailed to a creditor entitled to vote.

The Bankruptcy Court has directed that to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be received by the Debtors no later than ___ __, 2010 at 4:00 p.m. at the following address:

Benjamin E. Marcus, Esq.
Drummond Woodsum & MacMahon
84 Marginal Way, Suite 600
Portland, Maine  04101-2480

### B.    Claims and Interests Entitled to Vote

Classes or Claims that are not "impaired" under the Plan are deemed to have accepted the Plan and need not vote on the Plan. Any creditor whose Claim is impaired under the Plan is entitled to vote if either (i) such holder is one whose Claim is scheduled by the Debtors (and such Claim is not scheduled as disputed, contingent or unliquidated) or (ii) such holder has timely filed a proof of claim that (a) currently is not the subject to a timely filed objection that has not been withdrawn on or before any date fixed for filing such objection by the Plan or an order of the Bankruptcy Court, and (b) has not been denied by a Final Order.

A creditor holding a disputed Claim is not entitled to vote on account of such disputed Claim unless, upon application of such creditor, the Bankruptcy Court temporarily allows the disputed Claim in an amount that it deems proper for purposes of voting to accept or reject the Plan. Such application must be heard and determined by the Bankruptcy Court on or before the hearing on confirmation of the Plan.

Any creditor or holder of an equity interest that is to receive no distribution under the Plan on account of its Allowed Claim or Allowed equity interest is deemed to reject the Plan and, therefore, is not entitled to vote on the Plan. Furthermore, a vote of any Creditor may be disregarded if the Bankruptcy Court determines that such vote was not solicited or procured in good faith and in accordance with the Code.

If you have any questions regarding the procedures for voting on the Plan, please contact Benjamin E. Marcus, Esq., counsel to the Debtor, at Drummond Woodsum, 84 Marginal Way, Suite 600, Portland, Maine 04101-2480, telephone (207) 772-1941.

### C. Impairment Under the Plan

Under Code Section 1124, a class of Claims or interests is "impaired" under a plan of reorganization unless such plan pays in full, in cash, each Claim or interest in such class or otherwise leaves unaltered the legal, equitable and contractual rights of each holder of a Claim or interest in such class, other than by curing defaults or reinstating maturities.

Classes One, Two, Three and Six are impaired under the Plan and holders of Allowed Claims in those Classes are entitled to vote to accept or reject the Plan. Holders of Class Four and Five Allowed Claims are unimpaired and are deemed to accept the Plan. Holders of Class Seven Equity Interests are deemed to reject the Plan and do not vote on the Plan.

### D. Acceptance of the Plan

The Code defines acceptance of a plan of reorganization by a class of creditors as acceptance by creditors holding two-thirds in dollar amount and a majority in number of the Claims in such class, but for that purpose counts only those creditors that actually cast ballots. Holders of Claims that fail to vote are not counted as either accepting or rejecting a plan. As described further below in Section VI. F ("Confirmation"), the Plan may be confirmed without the acceptance of all classes of creditors if certain requirements are met.

### E. Best Interests Test

The Code provides that the Plan will not be confirmed, regardless of whether anyone objects to confirmation, unless the Bankruptcy Court first finds that the Plan is in the "best interests" of all classes of Claims or equity interests that are impaired. The "best interest test" will be satisfied in this Case by a finding by the Bankruptcy Court that either (i) all holders of impaired Claims or equity interests have accepted the Plan, or (ii) the Plan provides a holder that has not accepted that Plan with a recovery at least equal in value to the recovery such holder would receive if the Debtors were liquidated under Chapter 7 of the Code. The Plan Proponent

believes that the Plan is in the best interest of each Class of holders of Claims and Interests that are impaired under the Plan.

The starting point in determining whether the Plan meets the "best interests" test is a determination of the amount of the Debtors' liabilities and the liquidation value of Debtors' assets under Chapter 7 of the Code.

The liabilities of the Debtors as of November 30, 2010 were as follows:

| | |
|---|---|
| Secured Claims: | $2,374,126 |
| Priority Unsecured Claims: | $ 34,467 |
| General Unsecured Claims: | $ 878,881[1] |
| Post petition Trade debt: | $ 138,234 |
| Total Debt | $3,425,708 |

The value of the assets of the Debtor as of November 30, 2010 was as follows:

| | |
|---|---|
| Cash on hand: | $ 120,000 |
| Accounts Receivable | $ 110,000[2] |
| Inventory | $ 354,043[3] |
| Machinery & Equipment: | $ 363,283[4] |
| Intangible Assets | $ unknown[5] |
| Total: | $ 947,326 |

In a liquidation of the Debtors under Chapter 7 of the Code, Elgin Butler believes that the value of the Debtors' work in process and inventory will be rendered valueless because of the custom nature of the product. Based on the current market for used machinery and equipment in the tile-making industry and the appraisal of the New York equipment undertaken by Accuval, the Debtor believes that the liquidation value of the New York machinery and equipment is $123,000 and the value of the New Hampshire machinery and equipment is at most $40,000. In a liquidation, the Debtors' accounts receivable will also lose value because the Debtors and the Debtors' distributors will be unable to fulfill their contractual obligations which may result in offsetting claims. For purposes of this analysis, therefore, the Plan Proponent believes that the Debtors' accounts receivable will be worth only 50% of their face amount in a liquidation. The Debtor has no patents or trademarks and most of its work is on a custom order basis. It does not appear that the Debtors have any non-competes or other protective agreements in place with their

---

1 General unsecured claims includes that portion of scheduled priority claims in excess of the statutorily allowed priority.
2 Cash on hand and accounts receivable are derived from the Debtors' Monthly Operating Reports for the period ending November 30, 2010.
3 The inventory value is taken from the Trikeenan New York Monthly Operating Report for the period ending November 30, 2010. No inventory value is reported on the Trikeenan Monthly Operating Report for the same period.
4 This amount is the combined value for machinery, equipment, fixtures and office equipment listed on the Debtors' Bankruptcy Schedules.
5 The Debtors' Bankruptcy Schedules list the value of the Debtors' intangible assets as "unknown".

key officers and employees. Accordingly, it is very difficult to ascribe any value to the Debtors' intangible assets, such as intellectual property and goodwill, and it is reasonable to conclude that the Debtors' intangible personal property will be valueless in a liquidation. The outcome of a liquidation of the Debtors under Chapter 7 of the Code is estimated to be as follows:

| | | |
|---|---|---|
| Cash on hand | $ | 120,000 |
| Accounts Receivable | $ | 55,000 |
| Inventory | $ | 0 |
| Machinery & Equipment: | $ | 163,000 |
| Intangible Assets | $ | 0 |
| Total: | $ | 338,000 |

Elgin Butler estimates, therefore, that the proceeds of a liquidation of the Debtors' assets under Chapter 7 of the Code will yield only approximately $340,000, before selling expenses and the fees of the Chapter 7 Trustee.

All of the Debtors' assets are subject to valid, perfected and unavoidable liens held by one or more secured creditors. However, in a liquidation of the Debtors under Chapter 7 of the Code, Elgin Butler believes that the Debtors' cash on hand will be surcharged to pay the post petition trade debt of the Debtors. The basis for this conclusion is that post petition trade debt has been incurred during the period that the Debtors have authority to utilize cash collateral for ordinary course operations. Moreover, it would be inequitable to pay all cash on hand as well as the proceeds of post petition accounts receivable to the Debtors' secured creditors while failing to pay the Debtors' post petition trade creditors, whose post-petition extensions of trade credit enabled the Debtor to generate the accounts receivable. Accordingly, the estimated proceeds of a liquidation of the Debtors in Chapter 7 will be paid as follows:

| | |
|---|---|
| TDBank, N.A. | $ 77,000 |
| NYBDC | $ 123,000 |
| Steuben Trust Company/Hornell Industrial Development Authority | zero |
| Post Petition Trade | $ 138,000 |
| Priority Unsecured | zero |
| General Unsecured | zero |
| | $ 338,000 |

Under the Plan, and based upon the values set forth in the Monthly Operating Reports for November 30, 2010, the Debtors' creditors will receive the following treatment:

| | |
|---|---|
| TDBank, N.A. | $ 177,250 (Line balance plus $40,000) |
| NYBDC | $ 188,000 (Plus value of NY inventory) |
| Steuben Trust Company/ Hornell Industrial Dev. Authority | $1,060,037 (Plus value of Fired Earth AR) |
| Post Petition Trade | $ 138,000 (Payment in full) |
| Priority Unsecured | $ 34,467 (Payment in full) |
| General Unsecured | $ 147,333 (Estimated; See Exhibit B) |
| | $1,745,087 |

14

Based upon the foregoing analysis, all parties in interest in this proceeding will receive better treatment under the Plan proposed for the Debtors by Elgin Butler than they would receive in a liquidation of the Debtors under Chapter 7 of the Bankruptcy Code.

**F.     Confirmation**

Confirmation Hearing

Code Section 1128(a) requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of the Plan (the "Confirmation Hearing"). Code Section 1128(b) provides that any party in interest may object to confirmation of a plan.

By order of the Bankruptcy Court entered on March __, 2011, the Confirmation Hearing has been scheduled for _____, 2011 at the United States Bankruptcy Court, District of New Hampshire at _____ a.m. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing or any adjournment of that hearing. Any objection to confirmation must be made in writing, filed with the Bankruptcy Court and served upon all parties who have filed a demand for receipt of papers under Bankruptcy Rule 2002(i) and on Debtors' counsel, Benjamin E. Marcus, Esq., Drummond Woodsum, 84 Marginal Way, Suite 600, Portland, Maine 04101, together with proof of service, on or before _____ __, 2011.

Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014. Unless an objection to confirmation is timely served and filed, it will not be considered by the Bankruptcy Court.

At the Confirmation Hearing, the Bankruptcy Court must determine whether the requirements of Code Section 1129 have been satisfied and, upon demonstration of such compliance, the Bankruptcy Court will enter the Confirmation Order.

The Plan Proponent believes that the Plan satisfies all of the statutory requirements of Chapter 11 of the Code, that the Plan Proponent has complied or will have complied prior to the Confirmation Hearing with all of the requirements of Chapter 11, and that the Plan is proposed in good faith.

The Plan Proponent believes that the holder of each Claim impaired under the Plan will receive on and/or after the Effective Date a dividend in an amount not less than the amount likely to be received if Debtors were liquidated in a case under Chapter 7 of the Code, and that the Bankruptcy Court will so determine at the Confirmation Hearing.

If a Creditor or equity interest holder does not believe that the Plan satisfies all of the requirements set forth in Code Section 1129, such Creditor or equity interest holder should consult with legal counsel.

In the event that a Class of creditors entitled to vote rejects this Plan as a Class, the Plan Proponent will nonetheless request that the Court confirm the Plan over the objection of the non-consenting Class. The Court shall confirm the Plan if it determines that the Plan complies with all applicable legal requirements and that the Plan does not discriminate unfairly and is fair and equitable with respect to each Class of claims or interests that is impaired under and that has not accepted the Plan.

## VII.    MODIFICATION OF PLAN

The Plan Proponent may propose amendments or modifications to the Plan as provided in Code Section 1127. If all parties adversely affected by any modifications consent to such modifications, this Disclosure Statement shall be deemed adequate without modification and no further notice shall be required or given. In addition, the Plan Proponent may, with the approval of the Court, modify or amend the Plan through the Bankruptcy Court's order confirming the Plan. Notwithstanding anything to the contrary set forth herein, no amendment or modification which affects the treatment of the claims of Debtor may be allowed or approved without the express written consent of the Plan Proponent.

## VIII.    RETENTION OF JURISDICTION

Notwithstanding substantial consummation, the Bankruptcy Court shall retain exclusive jurisdiction of these proceedings under the provisions of Chapter 11 of the Code and 28 U.S.C. Section 1334 with respect to the following matters:

(a.)    To adjudicate all controversies concerning the classification, allowance, or determination of any Claim or interest, including, without limitation, any administrative claim;

(b.)    To hear and determine all Claims arising from rejection of any executory contract, including leases and to consummate the rejection and termination thereof;

(c.)    To liquidate damages in connection with any disputed contingent or unliquidated Claims;

(d.)    To adjudicate all claims to or ownership of any property of the Debtors or in any proceeds thereof arising prior to and after the Effective Date;

(e.)    To adjudicate all claims or controversies arising out of any purchase, sales or contracts made or undertaken by the Debtors prior to the Effective Date;

(f.)    To make such orders as are necessary and appropriate to construe or effectuate the provisions of the Plan;

(g.)    To hear and determine any and all Avoidance Actions, including, without limitation, any and all preference actions, fraudulent conveyance actions or other matters brought pursuant to the Debtor's avoidance or subordination powers;

(h.)    To hear and determine any and all applications of professional persons for allowance of compensation and/or reimbursement of expenses and all other Administrative Expenses which may be pending on, or made after, the Confirmation Date;

(i.)    To adjudicate any and all motions, adversary proceedings and litigated matters pending on the Confirmation Date or filed thereafter within any applicable statutory period;

(j.) To adjudicate any and all controversies and disputes arising under, or in connection with, the Plan or any order or document entered or approved by the Bankruptcy Court in connection with Debtors, the Case, or any controversy or dispute which may affect Debtors' or the Reorganized Debtors' ability to implement or fund the Plan;

(k.) To hear and determine such other matters as the Bankruptcy Court in its reasonable discretion shall deem appropriate.

## IX.  FEDERAL AND OTHER TAX CONSEQUENCES

Each holder of a Claim or equity interest is strongly urged to consult a tax advisor for information regarding any federal, state or local tax consequences of the treatment of such holder's Claim or equity interest under the Plan.

## X.  CONCLUSION

The Plan Proponent submits that the Plan complies in all respects with Chapter 11 of the Code, and recommends to holders of Claims who are entitled to vote on the Plan that they vote to accept the Plan. The Plan Proponent reminds such holders that each ballot, signed and marked to indicate the holder's vote must be received by Elgin Butler's counsel no later than 4:00 p.m. E.D.T. on _____ __, 2011 at the following address:

Benjamin E. Marcus, Esq.
Drummond Woodsum & MacMahon
84 Marginal Way, Suite 600
Portland, Maine 04101

DATED at Portland, Maine this 2nd day of February, 2011.

ELGIN BUTLER COMPANY

/s/ Matthew S. Galvez
By:      Matthew S. Galvez
Its:      President

ELGIN BUTLER COMPANY

By its Attorneys

/s/ Benjamin E. Marcus
Benjamin E. Marcus, Esq.

Melissa Hewey, Esq.  BNH #07130
DRUMMOND WOODSUM
84 Marginal Way, Suite 600
Portland, ME 04101-2480
(207) 772-1941

**Trikeenan Tile Works, Inc.**
**Summary Proforma Income Statement**

| | Apr-11 | May-11 | Jun-11 | Jul-11 | Aug-11 | Sep-11 | Oct-11 | Nov-11 | Dec-11 | 2011 |
|---|---|---|---|---|---|---|---|---|---|---|
| Revenues | 239,542 | 187,547 | 247,158 | 249,382 | 282,751 | 293,874 | 214,603 | 214,603 | 214,603 | 2,144,063 |
| Cost of Goods Sold | 91,796 | 81,866 | 95,949 | 90,315 | 102,991 | 107,217 | 75,926 | 75,926 | 75,926 | 879,778 |
| Gross Margin | 147,746 | 105,681 | 151,209 | 159,068 | 179,760 | 186,657 | 138,677 | 138,677 | 138,677 | 1,346,152 |
| Gross Margin % | 61.7% | 56.3% | 61.2% | 63.8% | 63.6% | 63.5% | 64.6% | 64.6% | 64.6% | 62.8% |
| Sales, General & Administration | 92,433 | 102,934 | 441,736 | 134,183 | 118,290 | 119,487 | 112,962 | 112,962 | 112,962 | 1,347,949 |
| Net Ordinary Expense | 55,313 | 2,747 | (290,527) | 24,884 | 61,469 | 67,170 | 25,715 | 25,715 | 25,715 | (1,797) |
| Other Expense (Income) | (6,841) | (6,841) | (6,841) | (6,841) | (6,841) | (6,841) | (6,841) | (6,841) | (6,841) | (61,569) |
| Tax Expense(Credits) | - | - | - | - | - | - | - | - | - | |
| Amort/Depr Expense | 1,211 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 22,011 |
| Total Other Expense (Income) | 60,943 | 6,988 | (286,286) | 29,125 | 65,710 | 71,411 | 29,956 | 29,956 | 29,956 | 37,760 |
| Total Interest Expense | 5,773 | 4,675 | 5,920 | 5,961 | 6,656 | 6,883 | 5,212 | 5,206 | 5,200 | 51,485 |
| Net Income/(Loss) | 55,170 | 2,313 | (292,207) | 23,164 | 59,055 | 64,528 | 24,744 | 24,751 | 24,757 | (13,725) |
| EBITDA | 62,154 | 9,588 | (283,686) | 31,725 | 68,310 | 74,011 | 32,556 | 32,556 | 32,556 | 59,772 |

**Trikeenan Tile Works, Inc.**
**Summary Proforma Income Stat**

| | Jan-12 | Feb-12 | Mar-12 | Apr-12 | May-12 | Jun-12 | Jul-12 | Aug-12 | Sep-12 | Oct-12 | Nov-12 | Dec-12 | 2012 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenues | 173,417 | 241,885 | 255,633 | 307,424 | 235,996 | 305,771 | 305,771 | 305,771 | 328,932 | 240,051 | 240,051 | 240,051 | 3,180,754 |
| Cost of Goods Sold | 65,809 | 90,540 | 88,508 | 111,099 | 90,754 | 111,737 | 111,737 | 111,737 | 120,535 | 84,172 | 84,172 | 84,172 | 1,154,969 |
| Gross Margin | 107,608 | 151,345 | 167,125 | 196,325 | 145,241 | 194,035 | 194,035 | 194,035 | 208,397 | 155,879 | 155,879 | 155,879 | 2,025,784 |
| Gross Margin % | 62.1% | 62.6% | 65.4% | 63.9% | 61.5% | 63.5% | 63.5% | 63.5% | 63.4% | 64.9% | 64.9% | 64.9% | 63.7% |
| Sales, General & Administration | 113,400 | 113,425 | 116,468 | 115,332 | 111,540 | 114,912 | 114,912 | 114,912 | 115,739 | 114,028 | 114,028 | 114,028 | 1,372,724 |
| Net Ordinary Expense | (5,792) | 37,920 | 50,657 | 80,993 | 33,701 | 79,123 | 79,123 | 79,123 | 92,658 | 41,851 | 41,851 | 41,851 | 653,060 |
| Other Expense (Income) | (6,841) | (6,841) | 2,705 | (6,841) | (6,841) | (6,841) | (6,841) | (6,841) | (6,841) | (6,841) | (6,841) | (6,841) | (72,546) |
| Tax Expense(Credits) | - | - | - | - | - | - | - | - | - | - | - | - | |
| Amort/Depr Expense | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 31,200 |
| Total Other Expense (Income) | (1,551) | 42,161 | 45,352 | 85,234 | 37,942 | 83,364 | 83,364 | 83,364 | 96,899 | 46,092 | 46,092 | 46,092 | 694,406 |
| Total Interest Expense | 4,329 | 5,760 | 6,043 | 7,124 | 5,618 | 7,077 | 7,071 | 7,065 | 7,545 | 5,672 | 5,666 | 5,660 | 74,629 |
| Net Income/(Loss) | (5,879) | 36,401 | 39,309 | 78,110 | 32,324 | 76,287 | 76,293 | 76,299 | 89,354 | 40,420 | 40,426 | 40,433 | 619,777 |
| EBITDA | 1,049 | 44,761 | 47,952 | 87,834 | 40,542 | 85,964 | 85,964 | 85,964 | 99,499 | 48,692 | 48,692 | 48,692 | 725,606 |

**Trikeenan Tile Works, Inc.**
**Summary Proforma Income Sta**

| | Jan-13 | Feb-13 | Mar-13 | Apr-13 | May-13 | Jun-13 | Jul-13 | Aug-13 | Sep-13 | Oct-13 | Nov-13 | Dec-13 | 2013 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenues | 193,879 | 270,650 | 286,065 | 344,137 | 264,046 | 342,284 | 342,284 | 342,284 | 342,284 | 249,743 | 249,743 | 249,743 | 3,477,141 |
| Cost of Goods Sold | 71,837 | 101,840 | 97,289 | 124,892 | 99,333 | 125,607 | 125,607 | 125,607 | 125,607 | 87,747 | 87,747 | 87,747 | 1,260,860 |
| Gross Margin | 122,042 | 168,810 | 188,776 | 219,245 | 164,714 | 216,676 | 216,676 | 216,676 | 216,676 | 161,996 | 161,996 | 161,996 | 2,216,280 |
| Gross Margin % | 62.9% | 62.4% | 66.0% | 63.7% | 62.4% | 63.3% | 63.3% | 63.3% | 63.3% | 64.9% | 64.9% | 64.9% | 63.7% |
| Sales, General & Administration | 114,520 | 114,548 | 117,960 | 116,686 | 112,435 | 116,215 | 116,215 | 116,215 | 116,215 | 114,434 | 114,434 | 114,434 | 1,384,312 |
| Net Ordinary Expense | 7,522 | 54,262 | 70,816 | 102,559 | 52,279 | 100,461 | 100,461 | 100,461 | 100,461 | 47,562 | 47,562 | 47,562 | 831,969 |
| Other Expense (Income) | (6,841) | (6,841) | 64,048 | (6,841) | (6,841) | (6,841) | (6,841) | (6,841) | (6,841) | (6,841) | (6,841) | 63,015 | 58,653 |
| Tax Expense(Credits) | - | - | - | - | - | - | - | - | - | - | - | - | |
| Amort/Depr Expense | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 31,200 |
| Total Other Expense (Income) | 11,763 | 58,503 | 4,168 | 106,800 | 56,520 | 104,702 | 104,702 | 104,702 | 104,702 | 51,803 | 51,803 | (18,053) | 742,116 |
| Total Interest Expense | 4,684 | 6,290 | 6,608 | 7,821 | 6,133 | 7,770 | 7,763 | 7,757 | 7,751 | 5,801 | 5,795 | 5,789 | 79,962 |
| Net Income/(Loss) | 7,079 | 52,213 | (2,439) | 98,979 | 50,387 | 96,933 | 96,939 | 96,945 | 96,951 | 46,002 | 46,008 | (23,842) | 662,153 |
| *EBITDA* | 14,363 | 61,103 | 6,768 | 109,400 | 59,120 | 107,302 | 107,302 | 107,302 | 107,302 | 54,403 | 54,403 | (15,453) | 773,316 |

**Trikeenan Tile Works, Inc.**
**Summary Proforma Income Statement**

| | April-Dec 2011 | 2012 | 2013 |
|---|---|---|---|
| Revenues | 2,144,063 | 3,180,754 | 3,477,141 |
| Cost of Goods Sold | 879,778 | 1,154,969 | 1,260,860 |
| Gross Margin | 1,346,152 | 2,025,784 | 2,216,280 |
| Gross Margin % | 62.8% | 63.7% | 63.7% |
| Sales, General & Administration | 1,347,949 | 1,372,724 | 1,384,312 |
| Net Ordinary Expense | (1,797) | 653,060 | 831,969 |
| Other Expense (Income) | (61,569) | (72,546) | 58,653 |
| Tax Expense(Credits) | - | - | - |
| Amort/Depr Expense | 22,011 | 31,200 | 31,200 |
| Total Other Expense (Income) | 37,760 | 694,406 | 742,116 |
| Total Interest Expense | 51,485 | 74,629 | 79,962 |
| **Net Income/(Loss)** | (13,725) | 619,777 | 662,153 |
| *EBITDA* | 59,772 | 725,606 | 773,316 |

**Trikeenan Tile Works, Inc.**
**Summary Proforma Balance Sheet**

| | Proj Opening | Proj Apr-11 | May-11 | Jun-11 | Jul-11 | Aug-11 | Sep-11 | Oct-11 | Nov-11 | Dec-11 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Assets** | | | | | | | | | | |
| Cash and Cash Equivalents | - | 46,403 | 81,732 | 416,032 | 255,187 | 232,582 | 267,447 | 323,310 | 352,490 | 375,004 |
| Accounts Receivable, net of allowance | 142,709 | 215,334 | 194,494 | 233,992 | 245,535 | 273,447 | 288,767 | 233,144 | 219,238 | 215,762 |
| Inventories, net of allowance | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 |
| Prepaids and Other Assets | 131,818 | 143,818 | 143,818 | 143,818 | 143,818 | 143,818 | 143,818 | 143,818 | 143,818 | 143,818 |
| _Current Assets_ | 294,527 | 425,555 | 440,044 | 813,842 | 664,540 | 669,847 | 720,032 | 720,273 | 735,546 | 754,584 |
| Plant, Property & Equipment, net of amort/depr | 218,000 | 216,789 | 464,189 | 461,589 | 458,989 | 456,389 | 453,789 | 451,189 | 448,589 | 445,989 |
| Inter-company | - | - | - | - | - | - | - | - | - | - |
| **Total Assets** | 512,528 | 642,344 | 904,233 | 1,275,431 | 1,123,529 | 1,126,236 | 1,173,821 | 1,171,461 | 1,184,135 | 1,200,573 |
| **Liabilities** | | | | | | | | | | |
| Accounts Payable | 0 | 74,647 | 89,207 | 359,678 | 191,679 | 142,399 | 132,524 | 112,487 | 107,478 | 106,225 |
| Accrued Liabilities | 120,000 | 120,000 | 116,667 | 113,333 | 110,000 | 106,667 | 103,333 | 100,000 | 96,667 | 93,333 |
| Accrued Taxes | | | | | | | | | | |
| Accrued Payroll | - | - | - | - | - | - | - | - | - | - |
| Accrued Interest | - | - | - | - | - | - | - | - | - | - |
| Inter-company | - | - | - | - | - | - | - | - | - | - |
| _Current Liabilities_ | 120,000 | 194,647 | 205,873 | 473,012 | 301,679 | 249,066 | 235,857 | 212,487 | 204,144 | 199,559 |
| Long Term Debt | 210,527 | 210,528 | 458,878 | 455,144 | 451,411 | 447,678 | 443,944 | 440,211 | 436,478 | 432,744 |
| **Total Liabilities** | 330,528 | 405,175 | 664,751 | 928,156 | 753,090 | 696,744 | 679,801 | 652,698 | 640,622 | 632,303 |
| Capital Stock | 182,000 | 182,000 | 182,000 | 582,000 | 582,000 | 582,000 | 582,000 | 582,000 | 582,000 | 582,000 |
| Retained Earnings | - | - | 55,170 | 57,482 | (234,725) | (211,561) | (152,506) | (87,978) | (63,234) | (38,483) |
| Current Results | - | 55,170 | 2,313 | (292,207) | 23,164 | 59,055 | 64,528 | 24,744 | 24,751 | 24,757 |
| _Owners' Equity_ | 182,000 | 237,170 | 239,483 | 347,276 | 370,439 | 429,494 | 494,022 | 518,766 | 543,517 | 568,274 |
| **Total Liabilities & Owners' Equity** | 512,528 | 642,345 | 904,234 | 1,275,432 | 1,123,529 | 1,126,238 | 1,173,823 | 1,171,464 | 1,184,139 | 1,200,576 |
| Balance check | 0 | 1 | 1 | 1 | 1 | 1 | 2 | 3 | 3 | 4 |

**Trikeenan Tile Works, Inc.**
**Summary Proforma Balance Sheet**

| | Jan-12 | Feb-12 | Mar-12 | Apr-12 | May-12 | Jun-12 | Jul-12 | Aug-12 | Sep-12 | Oct-12 | Nov-12 | Dec-12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Assets** | | | | | | | | | | | | |
| Cash and Cash Equivalents | 387,777 | 388,858 | 404,350 | 444,812 | 507,202 | 546,290 | 609,933 | 679,719 | 750,565 | 834,174 | 882,048 | 920,992 |
| Accounts Receivable, net of allowance | 184,003 | 227,414 | 248,578 | 292,713 | 250,175 | 291,872 | 302,296 | 304,903 | 322,925 | 260,770 | 245,231 | 241,346 |
| Inventories, net of allowance | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 |
| Prepaids and Other Assets | 143,818 | 143,818 | 143,818 | 143,818 | 143,818 | 143,818 | 143,818 | 143,818 | 143,818 | 143,818 | 143,818 | 143,818 |
| *Current Assets* | 735,598 | 780,090 | 816,747 | 901,343 | 921,195 | 1,001,980 | 1,076,048 | 1,148,440 | 1,237,307 | 1,258,762 | 1,291,097 | 1,326,156 |
| Plant, Property & Equipment, net of amort/depr | 443,389 | 440,789 | 438,189 | 435,589 | 432,989 | 430,389 | 427,789 | 425,189 | 422,589 | 419,989 | 417,389 | 414,789 |
| Inter-company | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Assets** | 1,178,987 | 1,220,879 | 1,254,936 | 1,336,932 | 1,354,184 | 1,432,369 | 1,503,836 | 1,573,629 | 1,659,896 | 1,678,751 | 1,708,486 | 1,740,945 |
| **Liabilities** | | | | | | | | | | | | |
| Accounts Payable | 97,587 | 110,145 | 111,959 | 122,912 | 114,908 | 123,874 | 126,115 | 126,676 | 130,656 | 116,158 | 112,534 | 111,628 |
| Accrued Liabilities | 90,000 | 86,667 | 83,333 | 80,000 | 76,667 | 73,333 | 70,000 | 66,667 | 63,333 | 60,000 | 56,667 | 53,333 |
| Accrued Taxes | | | | | | | | | | | | |
| Accrued Payroll | - | - | - | - | - | - | - | - | - | - | - | - |
| Accrued Interest | - | - | - | - | - | - | - | - | - | - | - | - |
| Inter-company | - | - | - | - | - | - | - | - | - | - | - | - |
| *Current Liabilities* | 187,587 | 196,811 | 195,292 | 202,912 | 191,574 | 197,207 | 196,115 | 193,342 | 193,990 | 176,158 | 169,200 | 164,961 |
| Long Term Debt | 429,011 | 425,278 | 421,544 | 417,811 | 414,078 | 410,344 | 406,611 | 402,878 | 399,144 | 395,411 | 391,678 | 387,944 |
| **Total Liabilities** | 616,598 | 622,089 | 616,837 | 620,723 | 605,652 | 607,551 | 602,726 | 596,220 | 593,134 | 571,569 | 560,878 | 552,905 |
| Capital Stock | 582,000 | 582,000 | 582,000 | 582,000 | 582,000 | 582,000 | 582,000 | 582,000 | 582,000 | 582,000 | 582,000 | 582,000 |
| Retained Earnings | (13,726) | (19,606) | 16,795 | 56,104 | 134,215 | 166,539 | 242,825 | 319,118 | 395,417 | 484,772 | 525,192 | 565,618 |
| Current Results | (5,879) | 36,401 | 39,309 | 78,110 | 32,324 | 76,287 | 76,293 | 76,299 | 89,354 | 40,420 | 40,426 | 40,433 |
| *Owners' Equity* | 562,394 | 598,795 | 638,104 | 716,215 | 748,539 | 824,825 | 901,118 | 977,417 | 1,066,772 | 1,107,192 | 1,147,618 | 1,188,051 |
| **Total Liabilities & Owners' Equity** | 1,178,992 | 1,220,884 | 1,254,941 | 1,336,938 | 1,354,190 | 1,432,377 | 1,503,844 | 1,573,637 | 1,659,906 | 1,678,761 | 1,708,496 | 1,740,956 |
| Balance check | 4 | 5 | 5 | 6 | 7 | 7 | 8 | 9 | 9 | 10 | 10 | 11 |

**Trikeenan Tile Works, Inc.**
**Summary Proforma Balance Sheet**

| | | Jan-13 | Feb-13 | Mar-13 | Apr-13 | May-13 | Jun-13 | Jul-13 | Aug-13 | Sep-13 | Oct-13 | Nov-13 | Dec-13 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Assets** | | | | | | | | | | | | | |
| Cash and Cash Equivalents | | 949,643 | 962,823 | 934,228 | 991,536 | 1,076,177 | 1,131,942 | 1,215,239 | 1,305,423 | 1,397,333 | 1,491,999 | 1,546,822 | 1,521,833 |
| Accounts Receivable, net of allowance | | 205,746 | 254,424 | 278,155 | 327,642 | 279,945 | 326,699 | 338,387 | 341,310 | 342,040 | 272,817 | 255,512 | 251,185 |
| Inventories, net of allowance | | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 |
| Prepaids and Other Assets | | 143,818 | 143,818 | 143,818 | 143,818 | 143,818 | 143,818 | 143,818 | 143,818 | 143,818 | 143,818 | 143,818 | 143,818 |
| | _Current Assets_ | 1,319,207 | 1,381,065 | 1,376,201 | 1,482,996 | 1,519,941 | 1,622,460 | 1,717,445 | 1,810,551 | 1,903,192 | 1,928,634 | 1,966,152 | 1,936,837 |
| Plant, Property & Equipment, net of amort/depr | | 412,189 | 409,589 | 406,989 | 404,389 | 401,789 | 399,189 | 396,589 | 393,989 | 391,389 | 388,789 | 386,189 | 383,589 |
| Inter-company | | - | - | - | - | - | - | - | - | - | - | - | - |
| | **Total Assets** | 1,731,396 | 1,790,654 | 1,783,190 | 1,887,385 | 1,921,730 | 2,021,649 | 2,114,034 | 2,204,540 | 2,294,580 | 2,317,423 | 2,352,341 | 2,320,426 |
| **Liabilities** | | | | | | | | | | | | | |
| Accounts Payable | | 102,067 | 116,180 | 118,222 | 130,505 | 121,530 | 131,584 | 134,098 | 134,726 | 134,883 | 118,791 | 114,768 | 113,762 |
| Accrued Liabilities | | 50,000 | 46,667 | 43,333 | 40,000 | 36,667 | 33,333 | 30,000 | 26,667 | 23,333 | 20,000 | 16,667 | 13,333 |
| Accrued Taxes | | | | | | | | | | | | | |
| Accrued Payroll | | - | - | - | - | - | - | - | - | - | - | - | - |
| Accrued Interest | | - | - | - | - | - | - | - | - | - | - | - | - |
| Inter-company | | - | - | - | - | - | - | - | - | - | - | - | - |
| | _Current Liabilities_ | 152,067 | 162,846 | 161,555 | 170,505 | 158,197 | 164,917 | 164,097 | 161,392 | 158,216 | 138,791 | 131,435 | 127,096 |
| Long Term Debt | | 384,211 | 380,478 | 376,744 | 373,011 | 369,278 | 365,544 | 361,811 | 358,078 | 354,344 | 350,611 | 346,878 | 343,144 |
| | **Total Liabilities** | 536,278 | 543,324 | 538,299 | 543,516 | 527,475 | 530,462 | 525,908 | 519,470 | 512,560 | 489,402 | 478,312 | 470,240 |
| Capital Stock | | 582,000 | 582,000 | 582,000 | 582,000 | 582,000 | 582,000 | 582,000 | 582,000 | 582,000 | 582,000 | 582,000 | 582,000 |
| Retained Earnings | | 606,051 | 613,130 | 665,343 | 662,903 | 761,882 | 812,269 | 909,202 | 1,006,140 | 1,103,085 | 1,200,037 | 1,246,038 | 1,292,046 |
| Current Results | | 7,079 | 52,213 | (2,439) | 98,979 | 50,387 | 96,933 | 96,939 | 96,945 | 96,951 | 46,002 | 46,008 | (23,842) |
| | _Owners' Equity_ | 1,195,130 | 1,247,343 | 1,244,903 | 1,343,882 | 1,394,269 | 1,491,202 | 1,588,140 | 1,685,085 | 1,782,037 | 1,828,038 | 1,874,046 | 1,850,204 |
| **Total Liabilities & Owners' Equity** | | 1,731,408 | 1,790,666 | 1,783,203 | 1,887,398 | 1,921,744 | 2,021,663 | 2,114,049 | 2,204,555 | 2,294,597 | 2,317,440 | 2,352,358 | 2,320,444 |
| Balance check | | 11 | 12 | 13 | 13 | 14 | 15 | 15 | 16 | 17 | 17 | 18 | 18 |

**Trikeenan Tile Works, Inc.**
**Summary Proforma Balance Sheet**

| | Proj Opening | Dec-11 | Dec-12 | Dec-13 |
|---|---|---|---|---|
| *Assets* | | | | |
| | | | | |
| Cash and Cash Equivalents | - | 375,004 | 920,992 | 1,521,833 |
| Accounts Receivable, net of allowance | 142,709 | 215,762 | 241,346 | 251,185 |
| Inventories, net of allowance | 20,000 | 20,000 | 20,000 | 20,000 |
| Prepaids and Other Assets | 131,818 | 143,818 | 143,818 | 143,818 |
| | - | - | - | - |
| *Current Assets* | 294,527 | 754,584 | 1,326,156 | 1,936,837 |
| | - | - | - | - |
| Plant, Property & Equipment, | 218,000 | 445,989 | 414,789 | 383,589 |
| net of amort/depr | - | - | - | - |
| Inter-company | - | - | - | - |
| | - | - | - | - |
| **Total Assets** | 512,528 | 1,200,573 | 1,740,945 | 2,320,426 |
| | - | - | - | - |
| *Liabilities* | - | - | - | - |
| | - | - | - | - |
| Accounts Payable | 0 | 106,225 | 111,628 | 113,762 |
| Accrued Liabilities | 120,000 | 93,333 | 53,333 | 13,333 |
| Accrued Taxes | - | - | - | - |
| Accrued Payroll | - | - | - | - |
| Accrued Interest | - | - | - | - |
| Inter-company | - | - | - | - |
| | - | - | - | - |
| *Current Liabilities* | 120,000 | 199,559 | 164,961 | 127,096 |
| | - | - | - | - |
| Long Term Debt | 210,527 | 432,744 | 387,944 | 343,144 |
| | - | - | - | - |
| **Total Liabilities** | 330,528 | 632,303 | 552,905 | 470,240 |
| | - | - | - | - |
| Capital Stock | 182,000 | 582,000 | 582,000 | 582,000 |
| Retained Earnings | - | (38,483) | 565,618 | 1,292,046 |
| Current Results | - | 24,757 | 40,433 | (23,842) |
| | - | - | - | - |
| *Owners' Equity* | 182,000 | 568,274 | 1,188,051 | 1,850,204 |
| | - | - | - | - |
| **Total Liabilities & Owners' Equity** | 512,528 | 1,200,576 | 1,740,956 | 2,320,444 |
| | - | - | - | - |

**Trikeenan Tile Works, Inc.**
**Summary Proforma Cash Flow**

| | Proj April-11 | May-11 | Jun-11 | Jul-11 | Aug-11 | Sep-11 | Oct-11 | Nov-11 |
|---|---|---|---|---|---|---|---|---|
| **Net Income from Operations** | 55,170 | 2,313 | (292,207) | 23,164 | 59,055 | 64,528 | 24,744 | 24,751 |
| Add Back Non-Cash Expenses: Depreciation & Amortization | 1,211 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 |
| **Net Cash Flow from Operations** | 56,381 | 4,913 | (289,607) | 25,764 | 61,655 | 67,128 | 27,344 | 27,351 |
| **Sources (Uses) of Cash:** | | | | | | | | |
| Accounts Receivable | (72,625) | 20,840 | (39,498) | (11,543) | (27,912) | (15,320) | 55,623 | 13,906 |
| Inventory | - | - | - | - | - | - | - | - |
| Prepaid Expenses | - | - | - | - | - | - | - | - |
| Accounts Payable | 74,647 | 14,559 | 270,472 | (167,999) | (49,280) | (9,876) | (20,037) | (5,009) |
| Accrued Liabilities | - | - | 0 | (0) | 0 | 0 | (0) | - |
| **Total Sources (Uses) of Cash** | 2,022 | 35,399 | 230,974 | (179,542) | (77,192) | (25,196) | 35,586 | 8,897 |
| **Net Cash Flow from Operating Activities** | 58,404 | 40,312 | (58,633) | (153,778) | (15,537) | 41,932 | 62,930 | 36,247 |
| **CASH FLOW FROM INVESTING ACTIVITIES:** | | | | | | | | |
| Additions to Fixed Assets | (0) | (250,000) | - | - | - | - | - | - |
| **CASH FLOW FROM FINANCING ACTIVITIES:** | (0) | (250,000) | - | - | - | - | - | - |
| Change in Retained Earnings | - | - | - | - | - | - | - | - |
| Change in Debt | 0 | 245,017 | (7,067) | (7,067) | (7,067) | (7,067) | (7,067) | (7,067) |
| Capital Infusion | - | - | 400,000 | - | - | - | - | - |
| | 0 | 245,017 | 392,933 | (7,067) | (7,067) | (7,067) | (7,067) | (7,067) |
| **Net Increase (Decrease) in Cash** | 58,404 | 35,329 | 334,301 | (160,845) | (22,604) | 34,865 | 55,864 | 29,180 |
| Cash at End of Period | 46,403 | 81,732 | 416,032 | 255,187 | 232,582 | 267,447 | 323,310 | 352,490 |
| Cash at Beginning of Period | - | 46,403 | 81,732 | 416,032 | 255,187 | 232,582 | 267,447 | 323,310 |
| **Cash Generated/(Used) During Period** | 46,403 | 35,328 | 334,300 | (160,845) | (22,604) | 34,865 | 55,863 | 29,180 |

**Trikeenan Tile Works, Inc.**
**Summary Proforma Cash Flow**

| | Dec-11 | Jan-12 | Feb-12 | Mar-12 | Apr-12 | May-12 | Jun-12 | Jul-12 | Aug-12 |
|---|---|---|---|---|---|---|---|---|---|
| *Net Income from Operations* | 24,757 | (5,879) | 36,401 | 39,309 | 78,110 | 32,324 | 76,287 | 76,293 | 76,299 |
| Add Back Non-Cash Expenses: Depreciation & Amortization | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 |
| *Net Cash Flow from Operations* | 27,357 | (3,279) | 39,001 | 41,909 | 80,710 | 34,924 | 78,887 | 78,893 | 78,899 |
| *Sources (Uses) of Cash:* | | | | | | | | | |
| Accounts Receivable | 3,476 | 31,759 | (43,411) | (21,164) | (44,135) | 42,538 | (41,697) | (10,424) | (2,606) |
| Inventory | - | - | - | - | - | - | - | - | - |
| Prepaid Expenses | - | - | - | - | - | - | - | - | - |
| Accounts Payable | (1,252) | (8,639) | 12,558 | 1,814 | 10,953 | (8,005) | 8,966 | 2,242 | 560 |
| Accrued Liabilities | - | 0 | (0) | - | (0) | (0) | 0 | 0 | - |
| *Total Sources (Uses) of Cash* | 2,224 | 23,120 | (30,853) | (19,349) | (33,181) | 34,533 | (32,731) | (8,183) | (2,046) |
| *Net Cash Flow from Operating Activities* | 29,581 | 19,840 | 8,148 | 22,560 | 47,529 | 69,457 | 46,156 | 70,710 | 76,853 |
| *CASH FLOW FROM INVESTING ACTIVITIES:* | | | | | | | | | |
| Additions to Fixed Assets | - | - | - | - | - | - | - | - | - |
| *CASH FLOW FROM FINANCING ACTIVITIES:* | - | - | - | - | - | - | - | - | - |
| Change in Retained Earnings | - | - | - | - | - | - | - | - | - |
| Change in Debt | (7,067) | (7,067) | (7,067) | (7,067) | (7,067) | (7,067) | (7,067) | (7,067) | (7,067) |
| Capital Infusion | - | - | - | - | - | - | - | - | - |
| | (7,067) | (7,067) | (7,067) | (7,067) | (7,067) | (7,067) | (7,067) | (7,067) | (7,067) |
| *Net Increase (Decrease) in Cash* | 22,514 | 12,774 | 1,081 | 15,493 | 40,462 | 62,391 | 39,089 | 63,643 | 69,787 |
| Cash at End of Period | 375,004 | 387,777 | 388,858 | 404,350 | 444,812 | 507,202 | 546,290 | 609,933 | 679,719 |
| Cash at Beginning of Period | 352,490 | 375,004 | 387,777 | 388,858 | 404,350 | 444,812 | 507,202 | 546,290 | 609,933 |
| *Cash Generated/(Used) During Period* | 22,514 | 12,773 | 1,080 | 15,493 | 40,461 | 62,390 | 39,088 | 63,643 | 69,786 |

**Trikeenan Tile Works, Inc.**
**Summary Proforma Cash Flow**

| | Sep-12 | Oct-12 | Nov-12 | Dec-12 | Jan-13 | Feb-13 | Mar-13 | Apr-13 | May-13 |
|---|---|---|---|---|---|---|---|---|---|
| *Net Income from Operations* | 89,354 | 40,420 | 40,426 | 40,433 | 7,079 | 52,213 | (2,439) | 98,979 | 50,387 |
| Add Back Non-Cash Expenses: Depreciation & Amortization | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 |
| *Net Cash Flow from Operations* | 91,954 | 43,020 | 43,026 | 43,033 | 9,679 | 54,813 | 161 | 101,579 | 52,987 |
| *Sources (Uses) of Cash:* | | | | | | | | | |
| Accounts Receivable | (18,022) | 62,155 | 15,539 | 3,885 | 35,600 | (48,678) | (23,731) | (49,487) | 47,696 |
| Inventory | - | - | - | - | - | - | - | - | - |
| Prepaid Expenses | - | - | - | - | - | - | - | - | - |
| Accounts Payable | 3,981 | (14,498) | (3,625) | (906) | (9,560) | 14,112 | 2,042 | 12,283 | (8,975) |
| Accrued Liabilities | 0 | (0) | - | 0 | (0) | (0) | 0 | 0 | (0) |
| *Total Sources (Uses) of Cash* | (14,041) | 47,657 | 11,914 | 2,979 | 26,040 | (34,566) | (21,689) | (37,203) | 38,722 |
| *Net Cash Flow from Operating Activities* | 77,913 | 90,677 | 54,941 | 46,011 | 35,719 | 20,247 | (21,528) | 64,375 | 91,709 |
| *CASH FLOW FROM INVESTING ACTIVITIES:* | | | | | | | | | |
| Additions to Fixed Assets | - | - | - | - | - | - | - | - | - |
| *CASH FLOW FROM FINANCING ACTIVITIES:* | - | - | - | - | - | - | - | - | - |
| Change in Retained Earnings | - | - | - | - | - | - | - | - | - |
| Change in Debt | (7,067) | (7,067) | (7,067) | (7,067) | (7,067) | (7,067) | (7,067) | (7,067) | (7,067) |
| Capital Infusion | - | - | - | - | - | - | - | - | - |
| | (7,067) | (7,067) | (7,067) | (7,067) | (7,067) | (7,067) | (7,067) | (7,067) | (7,067) |
| *Net Increase (Decrease) in Cash* | 70,846 | 83,610 | 47,874 | 38,944 | 28,652 | 13,181 | (28,595) | 57,309 | 84,642 |
| Cash at End of Period | 750,565 | 834,174 | 882,048 | 920,992 | 949,643 | 962,823 | 934,228 | 991,536 | 1,076,177 |
| Cash at Beginning of Period | 679,719 | 750,565 | 834,174 | 882,048 | 920,992 | 949,643 | 962,823 | 934,228 | 991,536 |
| *Cash Generated/(Used) During Period* | 70,846 | 83,610 | 47,873 | 38,944 | 28,652 | 13,180 | (28,595) | 57,308 | 84,641 |

**Trikeenan Tile Works, Inc.**
**Summary Proforma Cash Flow**

| | Jun-13 | Jul-13 | Aug-13 | Sep-13 | Oct-13 | Nov-13 | Dec-13 |
|---|---|---|---|---|---|---|---|
| *Net Income from Operations* | 96,933 | 96,939 | 96,945 | 96,951 | 46,002 | 46,008 | (23,842) |
| Add Back Non-Cash Expenses: Depreciation & Amortization | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 | 2,600 |
| *Net Cash Flow from Operations* | 99,533 | 99,539 | 99,545 | 99,551 | 48,602 | 48,608 | (21,242) |
| | | | | | | | |
| *Sources (Uses) of Cash:* | | | | | | | |
| Accounts Receivable | (46,754) | (11,688) | (2,922) | (731) | 69,223 | 17,306 | 4,326 |
| Inventory | - | - | - | - | - | - | - |
| Prepaid Expenses | - | - | - | - | - | - | - |
| Accounts Payable | 10,054 | 2,513 | 628 | 157 | (16,092) | (4,023) | (1,006) |
| Accrued Liabilities | (0) | (0) | 0 | 0 | (0) | (0) | - |
| *Total Sources (Uses) of Cash* | (36,700) | (9,175) | (2,294) | (573) | 53,131 | 13,283 | 3,321 |
| *Net Cash Flow from Operating Activities* | 62,833 | 90,364 | 97,251 | 98,978 | 101,733 | 61,891 | (17,921) |
| | | | | | | | |
| *CASH FLOW FROM INVESTING ACTIVITIES:* | | | | | | | |
| Additions to Fixed Assets | - | - | - | - | - | - | - |
| *CASH FLOW FROM FINANCING ACTIVITIES:* | - | - | - | - | - | - | - |
| | | | | | | | |
| Change in Retained Earnings | - | - | - | - | - | - | - |
| Change in Debt | (7,067) | (7,067) | (7,067) | (7,067) | (7,067) | (7,067) | (7,067) |
| Capital Infusion | - | - | - | - | - | - | - |
| | (7,067) | (7,067) | (7,067) | (7,067) | (7,067) | (7,067) | (7,067) |
| *Net Increase (Decrease) in Cash* | 55,766 | 83,297 | 90,185 | 91,911 | 94,666 | 54,824 | (24,988) |
| Cash at End of Period | 1,131,942 | 1,215,239 | 1,305,423 | 1,397,333 | 1,491,999 | 1,546,822 | 1,521,833 |
| Cash at Beginning of Period | 1,076,177 | 1,131,942 | 1,215,239 | 1,305,423 | 1,397,333 | 1,491,999 | 1,546,822 |
| *Cash Generated/(Used) During Period* | 55,765 | 83,296 | 90,184 | 91,910 | 94,665 | 54,823 | (24,989) |

**Trikeenan Tile Works, Inc.**
**Summary Proforma Cash Flow**

| | Apr-Dec 2011 | 2012 | 2013 |
|---|---|---|---|
| *Net Income from Operations* | (13,725) | 619,777 | 662,153 |
| Add Back Non-Cash Expenses: Depreciation & Amortization | 22,011 | 31,200 | 31,200 - |
| *Net Cash Flow from Operations* | 8,286 | 650,977 | 693,353 |
| *Sources (Uses) of Cash:* | | | |
| Accounts Receivable | (73,052) | (25,585) | (9,839) |
| Inventory | - | - | - |
| Prepaid Expenses | - | - | - |
| Accounts Payable | 106,225 | 5,402 | 2,135 |
| Accrued Liabilities | 0 | 0 | (0) |
| *Total Sources (Uses) of Cash* | 33,173 | (20,182) | (7,704) |
| *Net Cash Flow from Operating Activities* | 41,459 | 630,795 | 685,649 |
| *CASH FLOW FROM INVESTING ACTIVITIES:* | | | |
| Additions to Fixed Assets | (250,000) | - | - |
| *CASH FLOW FROM FINANCING ACTIVITIES:* | (250,000) | - | - |
| Change in Retained Earnings | - | - | - |
| Change in Debt | 195,550 | (84,800) | (84,800) |
| Capital Infusion | 400,000 | - | - |
| *Net Increase (Decrease) in Cash* | 387,009 | 545,995 | 600,849 |
| Cash at End of Period | 375,004 | 920,992 | 1,521,833 |
| Cash at Beginning of Period | - | 375,004 | 920,992 |
| *Cash Generated/(Used) During Period* | 375,004 | 545,988 | 600,842 |

| | | Closing | 2011 | 2012 | 2013 | Balance | TOTAL |
|---|---|---|---|---|---|---|---|
| TD Bank | | 177,000 | | | | | 177,000 |
| Stueben | | 26,400 | | | | | 26,400 |
| Hornell IDA | Principal | | 26,667 | 40,000 | 36,667 | 16,667 | 120,000 |
| | Interest | | - | - | - | | |
| NYBDC | Principal | | 13,200 | 19,800 | 18,150 | 146,850 | 198,000 |
| | Interest | | 5,717 | 7,833 | 6,398 | | |
| Lease payments | | | 72,003 | 108,004 | 108,004 | 756,028 | 1,044,039 |
| Priority unsecured claims | | 34,467 | | | | | 34,467 |
| 10% EBIT to creditors | | | | 9,546 | 70,889 | 69,856 | 150,291 |